# Supreme Court of Texas

No. 23-0607

Renaissance Medical Foundation,

*Petitioner*,

v.

Rebecca Lugo, Individually and as Next Friend of I.B.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued September 11, 2024**

JUSTICE BUSBY delivered the opinion of the Court.

JUSTICE BLAND filed a concurring opinion, in which Chief Justice Blacklock and Justice Devine joined.

Under Texas common law, an employer is vicariously liable for the torts of its employees within the scope of their employment if it "has the right to control the progress, details, and methods of operations of the work."[1]   This permissive interlocutory appeal in a medical

---

[1] *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002).

malpractice case concerns the alleged vicarious liability of a nonprofit health organization—a unique type of medical practice that may employ physicians but "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law." TEX. OCC. CODE §§ 162.001(b), .0021, .0022(b)(2).

We must decide whether the statute has modified the extent to which such an organization may be held vicariously liable for the torts of its employee physicians. We conclude that it has: a nonprofit health organization may not be held vicariously liable if exercising its right of control regarding the alleged negligence would interfere with its employee physician's exercise of independent medical judgment. Because the defendant organization did not conclusively demonstrate such interference, we conclude the court of appeals correctly affirmed the denial of the organization's motion for summary judgment, and we remand for further proceedings.

## BACKGROUND

Renaissance Medical Foundation (the Practice) is a nonprofit health organization (NPHO) certified by the Texas Medical Board under Section 162.001 of the Texas Occupations Code.[2] Organized to deliver health care to the public, the Practice entered into an employment contract with Dr. Michael Burke, a neurosurgeon. The contract provided that Dr. Burke was employed "to provide professional medical services" exclusively to the Practice's patients at specified locations—

---

[2] The record does not address whether the Practice is certified by the Board. But the parties have stated that it is, so we accept that fact as true for purposes of this appeal. *See* TEX. R. APP. P. 38.1(g).

including Doctors Hospital at Renaissance—"as directed" by the Practice and "in accordance with [the Practice's] protocols, policies and procedures."

Rebecca Lugo brought her minor daughter to the Hospital for brain surgery. Dr. Burke performed the surgery, which left Lugo's daughter with permanent neurological damage. In the following weeks, Dr. Burke expressed his belief that a retractor used during the procedure migrated into the child's brainstem, causing her injury.

Lugo filed suit individually and on behalf of her daughter,[3] alleging that the retractor migrated because it was contacted either by Dr. Burke, the surgical technician employed by the Hospital who was assisting Dr. Burke, or a suction device or its tubing as the device was handed to Dr. Burke by the technician. Lugo alleged Dr. Burke was negligent in "[f]ailing [to] properly perform the surgery," "[f]ailing to properly place the retractor," "[f]ailing to secure the retractor," "[f]ailing to monitor the location of the retractor during the surgery," and "[a]llowing the retractor to migrate." In addition to Dr. Burke, Lugo named the Hospital and the Practice as defendants, alleging that the Practice was vicariously liable for Dr. Burke's negligence and that the Hospital was vicariously liable for the technician's negligence.

The Practice filed a traditional motion for summary judgment, arguing it could not be held vicariously liable for Dr. Burke's negligence as a matter of law because the Practice is prohibited from practicing

---

[3] Although Lugo's daughter is no longer a minor, the petition alleges that she remains mentally incompetent and unable to pursue her individual claims independently.

3

medicine, it did not control the manner in which Dr. Burke provided medical care, and Dr. Burke was an independent contractor for purposes of providing medical care. The trial court denied the motion in a reasoned order, concluding Dr. Burke's employment agreement granted the Practice sufficient control over Dr. Burke to trigger vicarious liability even though he retained the right to exercise independent medical judgment while providing patient care. The order went on to authorize a permissive interlocutory appeal of the ruling, concluding that resolution of the vicarious liability question in the Practice's favor "would preclude the need for the Practice to participate in additional discovery and a full trial on the merits."

On appeal, the Practice argued it could not be vicariously liable for Dr. Burke's negligence because statutes governing NPHOs and the practice of medicine in Texas deprive it of any right to control Dr. Burke's work.[4] The court of appeals affirmed, holding that Dr. Burke was an employee of the Practice under the traditional common-law factors and this Court's decisions, and that he was acting in the course and scope of his employment when the alleged negligence

---

[4] Although no party has raised the issue, our concurring colleagues contend that the Practice did not adequately notify Lugo of this argument in the trial court. *Post* at 2-3, 12-13 (Bland, J., concurring). To be sure, a motion for summary judgment must stand or fall on the grounds expressly presented in the motion itself. *E.g.*, *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). But as just discussed, one of the grounds raised by the Practice was that it did not control the manner in which Dr. Burke provided medical care. We cannot say the court of appeals erred in treating the Practice's statutory argument as a subsidiary question fairly included within this ground. *See, e.g.*, *Lee v. Rogers Agency*, 517 S.W.3d 137, 164 (Tex. App.—Texarkana 2016, pet. denied).

occurred. 672 S.W.3d 901, 906-915 (Tex. App.—Corpus Christi–Edinburg 2023). The Practice then filed a petition for review, which we granted.

## ANALYSIS

The sole issue presented is whether an NPHO can be held vicariously liable for the torts of its physician employees under ordinary common-law rules, or whether statutes have altered the usual application of those rules in whole or part by providing that: (1) only individuals may be licensed to practice medicine, TEX. OCC. CODE § 155.001; (2) employed physicians "retain independent medical judgment," *id.* § 162.0023; and (3) NPHOs "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law, including board rules," *id.* § 162.0021. As explained below, we have previously held that the first two statutory provisions do not modify common-law vicarious liability, and the Practice concedes that some vicarious liability is available. But we conclude that the third change affects the scope of such liability.

We begin by examining the statutes that enable the formation of NPHOs against the backdrop of our historical prohibition on the corporate practice of medicine. We then address the role of a physician's independent medical judgment in the vicarious liability analysis. Finally, we examine the statutory limits on NPHO control over its employee physicians.

5

## I. Standard of review and applicable law

We review de novo the denial of a traditional motion for summary judgment. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). A defendant is entitled to summary judgment when it conclusively negates at least one element of the plaintiff's theory of recovery. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Here, the parties have stipulated that the Practice's ground for summary judgment presents purely a question of law and does not require the resolution of any disputed questions of material fact.

The statutory backdrop for the Practice's motion begins with the Texas Medical Practice Act. The Act prohibits the practice of medicine without a license, which may only be issued to a "person." TEX. OCC. CODE §§ 155.001-.002. To curb the unlicensed practice of medicine and "prevent possible abuses resulting from lay control" of medical care in Texas, corporations were historically prohibited from employing physicians and receiving a fee for their services. *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citations omitted); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 539 (Tex. 2002) (plurality op.). Instead, physicians ordinarily provide medical care as independent contractors. *Bodin v. Vagshenian*, 462 F.3d 481, 495 (5th Cir. 2006) (Owen, J., concurring); *see also Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 950 (Tex. 1998).

In 1999, the Texas Legislature altered this landscape, allowing certain types of health organizations to choose to employ physicians without engaging in the unlicensed practice of medicine. One such

6

organization is the NPHO. TEX. OCC. CODE § 162.001. To qualify as an NPHO, the entity must be a nonprofit corporation that is organized solely by persons licensed by the Texas Medical Board for a qualifying purpose—here, the delivery of health care—and is independently certified by the Board. *Id.* § 162.001(b). An NPHO's directors and trustees must also be licensed by the Board and actively engaged in the practice of medicine. *Id.*

Although an NPHO "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law, including board rules," *id.* § 162.0021, an NPHO "shall adopt, maintain, and enforce policies to ensure that a physician employed by the health organization exercises independent medical judgment when providing care to patients," *id.* § 162.0022(a), and "must include policies relating to . . . quality assurance," *id.* § 162.0022(b)(2). The statute goes on to codify the familiar principle that an employee physician "retains independent medical judgment in providing care to patients," explicitly instructing that NPHOs "may not discipline the physician for reasonably advocating for patient care." *Id.* § 162.0023.

## II. The licensing of individual physicians and their exercise of independent medical judgment do not preclude vicarious liability.

The Practice asks us to consider how this statutory scheme interacts with the common law, under which a defendant is vicariously liable for the torts of its employees committed within the course and scope of their employment but not for the torts of independent contractors. *E.g.*, *Baptist Mem'l Hosp.*, 969 S.W.2d at 947, 949. "The

7

test to determine whether a worker is an employee rather than an independent contractor" is whether the entity "has the right to control the progress, details, and methods of operations of the work." *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002).

Right of control "may be shown by explicit contractual assignment or actual exercise of control," *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004), and the parties agree that only the former is at issue here. We consider five factors to determine contractual right of control:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

*McNamara*, 71 S.W.3d at 312.

Applying these factors, the court of appeals concluded that Dr. Burke was an employee of the Practice, just as his contract says. The Practice agreed to furnish him with all tools, supplies, and materials necessary to perform his job, required him to provide medical services to the Practice's patients as directed and in accordance with the Practice's policies, required him to work at least forty hours each week, paid him a regular salary, and retained discretion to change his practice sites. 627 S.W.3d at 911.

The Practice argues that the above-described statutes authorizing only individuals to practice medicine alter this conclusion. But the practice of medicine is defined as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect

8

cures of those conditions, by a *person*," TEX. OCC. CODE § 151.002(a)(13) (emphasis added), which in this context generally "means an individual," *id.* § 151.002(a)(11). Thus, it is far from clear that a corporation would itself be practicing medicine if it exercised a contractual right to control an individual physician employee.[5]

Moreover, we have already considered and rejected the contention that "because a corporation cannot be licensed to practice medicine in Texas, incorporated [entities] cannot 'direct the details of work' of a physician engaged in the practice of medicine" and thus "cannot be vicariously liable as an employer for a physician's malpractice" under the common law. *St. Joseph Hosp.*, 94 S.W.3d at 539. Adopting a relevant section of the Restatement (Second) of Agency,[6] we explained:

> A statute prohibiting an incorporated hospital from employing a physician does not prevent the parties from factually accomplishing that very act in violation of the law any more than a statute prohibiting a crime makes the crime factually impossible to commit. Regardless of whether it was proper for [the physician] to be [the

---

[5] Similarly, statutes governing penalties that may be imposed for the illegal practice of medicine provide that "[a] *person* commits an offense if the *person* practices medicine in this state in violation of [the Medical Practice Act]." TEX. OCC. CODE § 165.152 (emphases added); *see also id.* § 164.001 (authorizing the Board to pursue disciplinary action against any *person* who violates the Medical Practice Act); *id.* § 164.052 (listing instances when a *person* applying for Board licensure commits a prohibited practice); *id.* § 165.153 (clarifying that a *person* practicing medicine without a license is subject to additional criminal penalties when they cause another to suffer physical, psychological, or financial harm).

[6] "The fact that the state regulates the conduct of an employee through the operation of statutes requiring licenses or specific acts to be done or not to be done does not prevent the employer from having such control over the employee as to constitute him a servant." *St. Joseph Hosp.*, 94 S.W.3d at 540 (quoting RESTATEMENT (SECOND) OF AGENCY § 220 cmt. i (AM. L. INST. 1958)).

9

corporation's] employee, if he in fact was so when he treated [the plaintiff], then as his employer [the corporation] is vicariously liable for his actions.

*Id.* at 539-540.[7]

The Practice also argues that the court of appeals overlooked an important term of Dr. Burke's contract with the Practice, which provides that Dr. Burke "shall retain the right to exercise [his] independent medical judgment in providing Medical Services to patients." In the Practice's view, this language precludes the right of control necessary for vicarious liability.

We rejected a similar contention in *Murk v. Scheele*, holding that a government hospital could be vicariously liable under the Texas Tort Claims Act because the physician accused of malpractice was the hospital's employee under common-law rules. 120 S.W.3d 865, 867 (Tex. 2003). The hospital argued that the physician's "exercise of independent professional judgment as a treating physician was outside [the hospital's] right of control, thereby excluding him from the statutory definition of 'employee.'" *Id.* We disagreed, concluding that "a physician whose practice is controlled by a governmental unit is not precluded from being an 'employee' within the meaning of the Act simply because

[7] *See also Marino v. Lenoir*, 526 S.W.3d 403, 409-410 (Tex. 2017) ("[W]e construe statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles. [*St. Joseph Hosp. v.*] *Wolff* explained that looking to control over the details of an employee's work is a longstanding common-law basis for establishing an employer-employee relationship, and distinguishing an employee from an independent contractor. . . . [*St. Joseph Hosp. v.*] *Wolff*, we think, looked to which entity actually controlled the [physician] under the relevant contract." (footnote omitted)).

10

he or she must exercise some independent medical judgment." *Id.* "While the nature of his practice as a physician required him to make many medical decisions using his own professional judgment, the necessity for that judgment did not, by itself, vitiate [the hospital's] right to control the details of his practice." *Id.* (citations omitted).

The Practice contends that *Murk* is unique to the Tort Claims Act context. Not so. As we recently reiterated, the analysis of whether someone is an "employee" under the Act's definition tracks the common law.[8] Furthermore, we analyzed whether the physician was an employee in *Murk* because the Tort Claims Act prevents both a government employer and its employee from being held liable for the same act. *See* 120 S.W.3d at 866-67; TEX. CIV. PRAC. & REM. CODE § 101.106. If an employer could not be held vicariously liable for its employee physician's negligence, as the Practice argues, then we should not have dismissed the claims against the employee in *Murk*. We adhere to *Murk* and *St. Joseph Hospital*, which foreclose these arguments made by the Practice.[9]

---

[8] *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 20 (Tex. 2024) (noting that the court of appeals "conducted the familiar employee-versus-independent-contractor analysis that Texas courts have long used in [the Tort Claims Act] and other legal contexts"); *Marino*, 526 S.W.3d at 409-410 (citing Court precedent clarifying that the Act codifies the common law with respect to employee status).

[9] We note that the holdings of *Murk* and *St. Joseph Hospital* are consistent with the Restatement (Third) of Torts: Medical Malpractice recently given final approval by the American Law Institute. Section 15 of the Restatement recognizes that "[a] medical . . . institution is vicariously liable for the tortious conduct of its employee acting within the scope of employment" and provides the familiar common-law definition of "employee" as "an agent

11

**III. By limiting the control NPHOs can exercise over their employee physicians, the statute narrows the scope of their vicarious liability.**

The Practice next argues that the Legislature partially stripped NPHOs of the right of control necessary for vicarious liability under the common law. In support of this argument, the Practice points out that NPHOs "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law." TEX. OCC. CODE § 162.0021. Because the Legislature has prohibited NPHOs from exercising control over the full scope of a physician's employment, the Practice contends that a court asked to hold an NPHO vicariously liable must analyze whether the particular tasks that the physician employee negligently performed or failed to perform are ones that the statute prohibits an NPHO from controlling.

The Practice emphasizes that it is not contending NPHOs are immune from liability altogether. For example, it notes that NPHOs could still be liable for employees' negligent medical care that they actually take steps to control (even if such control violates the statute) or for negligence by their ostensible agents, as well as liable for their

---

whose manner and means of work the [medical] institution controls or has the right to control." RESTATEMENT (THIRD) OF TORTS: MEDICAL MALPRACTICE § 15(a) (AM. L. INST. 2024). Regarding this right of control, comment d explains that the expectation employee physicians will "exercise independent medical judgment without being controlled by lay managers or entities . . . does not mean . . . that vicarious liability doctrines . . . do not apply." *Id.* § 15 cmt. d. "Instead, respondeat superior applies to employed professionals, regardless of the degree of professional autonomy a medical employee retains, by virtue of the other elements of control that an employment relationship entails." *Id.*

own negligence in hiring physicians or providing health care. But the Practice observes that none of these types of liability are alleged here.

By contrast, Lugo argues that the terms of Dr. Burke's employment agreement granted the Practice a right of control sufficient to impose vicarious liability and that, in any event, the Practice exercised control over Dr. Burke's employment because his medical care was subject to the Practice's protocols, policies, and procedures. Lugo also points out that we have rejected a task-by-task assessment of control as "an unworkable paradigm [for vicarious liability] that conceivably could result in an individual shifting between employee and independent contractor status countless times in a given work day." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 133 (Tex. 2018) (internal quotation marks omitted).

We agree with the Practice in part. The statute does not expressly preclude NPHO liability, as the Legislature did elsewhere in the same chapter.[10] And the statute gives NPHOs the right to "employ" physicians—a concept with a settled common-law meaning that includes vicarious employer liability. *See SandRidge Energy, Inc. v. Barfield*, 642 S.W.3d 560, 566 (Tex. 2022) ("Absent a textual contradiction, we may conclude that the Legislature uses terms that have a developed meaning at common law for the purpose of conveying a meaning consistent with that which we historically afforded to it." (internal quotation marks omitted)).

---

[10] For example, Section 162.157 provides that "[a] health care entity or its designated credentials verification organization is immune from liability arising from its reliance on data furnished by the board under this subchapter." TEX. OCC. CODE § 162.157.

13

Moreover, the Practice points out that it relies on the existence of a "bona fide employment relationship" between itself and its physicians to comply with federal anti-kickback laws. Federal statutes make it a felony for organizations to pay any remuneration to induce a physician to refer a patient for goods or services that may be paid for by a federal healthcare program. *See* 42 U.S.C. § 1320a-7b(b)(2). But that felony does not extend to "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services." *Id.* § 1320a-7b(b)(3)(B). The Practice's position that it has this sort of traditional employer–employee relationship with its physicians is in tension with its broad request to be excused from vicarious liability for the torts those physicians commit while they are providing "medical care," which would treat the physicians as independent contractors for liability purposes.

On the other hand, we have repeatedly held that "the right to control remains the supreme test for whether the master–servant relationship exists and thus whether the rule of vicarious liability applies." *St. Joseph Hosp.*, 94 S.W.3d at 542 (internal quotation marks omitted); *see also Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 287 n.1 (Tex. 2021) (Boyd, J., concurring) (collecting cases). And even when it is settled that the requisite employer–employee relationship exists, we have excepted a general employer from vicarious liability for the torts committed by its employee who has become the borrowed employee of another because the general employer no longer retains the right to control the employee. *St. Joseph Hosp.*, 94 S.W.3d at 537-38.

14

Imposing vicarious liability upon an NPHO for employee conduct it is statutorily prohibited from controlling would be inconsistent with this basic principle underlying of our vicarious-liability precedents.

This Court has previously recognized that statutory provisions and considerations of industry structure can alter the usual right-of-control inquiry in a manner that affects vicarious liability. For example, although courts generally decide "whether a workers' compensation insurance policy covers a worker's injury by determining whether the subscribing company is the worker's employer under the right-of-control test," we held that the Staff Leasing Services Act compels a different analysis with respect to leased workers. *Tex. Workers' Comp. Ins. Fund v. DEL Indus., Inc.*, 35 S.W.3d 591, 595 (Tex. 2000). At the time, the Act provided that a staff leasing company retained the right of direction and control over the leased employees and granted it the exclusive right to elect or deny workers' compensation coverage for those employees. *Id.* at 594-95. Thus, we held the Act "statutorily supersede[d] the common law right-of-control test in determining employer status of leased employees for workers' compensation coverage purposes," making the leasing company their employer. *Id.* at 595-96.

Likewise, we have modified the right-of-control inquiry for industries that have a unique structure. In *Exxon Corp. v. Tidwell*, we considered whether an oil company owed a duty to protect an employee of its service station tenant from criminal acts by third parties. 867 S.W.2d 19, 20 (Tex. 1993). We observed that although a company would traditionally owe a duty to a contractor's employees if it had the right to

15

control the details of their work, "a hybrid body of law has developed governing oil companies and their service station lessees." *Id.* at 21. Given this unique combination of agency and landlord–tenant law, we held that "in a case alleging negligence in maintaining a safe workplace, the court's inquiry must focus on who had specific control over the safety and security of the premises"—that is, over "the alleged security defects that led to [the employee's] injury"—rather than on the "traditional test of right of control over general operations." *Id.* at 23.

Here, the Legislature created NPHOs to serve as a unique employment structure in the health care industry, and it statutorily narrowed an NPHO's right of control over its physician employees. Section 162.001 of the Occupations Code enables the formation of NPHOs organized and managed by licensed physicians, and it allows NPHOs to choose to either contract with or employ physicians. TEX. OCC. CODE § 162.001(b), (c). Yet even if an NPHO chooses to employ physicians, as the Practice has here, it "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law," *id.* § 162.0021, and this prohibition "may not be voided or waived by contract." *Id.* § 162.0024(a).

As in *DEL Industries* and *Tidwell*, we conclude that the unique structure of NPHO employers and the statute's restrictions on their activities narrow the scope of their right of control and thus of their vicarious liability. To determine when an NPHO can be held vicariously liable for its physician employee's negligent acts or omissions, then, we must examine in detail the limits that the statute places on the NPHO's right of control.

16

The statute does not prevent NPHOs from controlling any provision of "medical care," as the Practice argues. Instead, it prohibits NPHOs from "interfer[ing] with, control[ling], or otherwise direct[ing] a physician's professional judgment *in violation of this subchapter or any other provision of law*, including board rules." TEX. OCC. CODE § 162.0021 (emphasis added). Accordingly, we must look to other laws and rules to determine precisely what sort of interference, direction, or control is prohibited. *See Pub. Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448, 460 (Tex. 2024) (explaining that statutory "text must always be read 'in context—not isolation'" (quoting *State v. Hollins*, 620 S.W.3d 400, 407 (Tex. 2020))). This "[c]ontextual reading yields the text's 'fair meaning,' our interpretive North Star." *Kelley v. Homminga*, 706 S.W.3d 829, 832 (Tex. 2025) (quoting *In re Dallas County*, 697 S.W.3d 142, 158 (Tex. 2024)).

The very next section of the subchapter sheds some light on the scope of this prohibition, providing that an NPHO "shall adopt, maintain, and enforce policies to ensure that a physician employed by the health organization exercises independent medical judgment when providing care to patients" and "must include policies relating to" certain subjects, such as "quality assurance." TEX. OCC. CODE § 162.0022(a), (b)(2). So long as the policies "reserve[] the sole authority to engage in the practice of medicine to a physician," the statute is not violated. *Id.* § 162.0022(d).

These provisions, when read together, do not bar NPHOs from directing or controlling their physician employees in all aspects of their medical practice. To the contrary, the statute mandates that NPHOs

17

have policies for their physicians to follow, and it requires those policies to assure quality care and ensure that physicians exercise their independent medical judgment. Nothing in the statute prohibits an NPHO from having policies that facilitate rather than interfere with its physician employees' exercise of independent medical judgment in providing quality care to the NPHO's patients.[11]

The parties devote considerable attention to these statutory provisions regarding policies.[12] Although the provisions do help to illustrate the scope of control that an NPHO may exercise, which is relevant to vicarious liability, we emphasize that a claim based on an NPHO's alleged negligence in providing or failing to provide particular policies allowed by statute would be one for direct rather than vicarious

---

[11] Indeed, such policies are commonly used to ensure that physicians have reliable knowledge readily at hand regarding the standard of care in various circumstances so they can make an informed exercise of their professional judgment. *See, e.g.*, *Bush v. Columbia Med. Ctr.*, No. 23-0460, ___ S.W.3d ___, slip op. at 18 (Tex. May 23, 2025) ("[P]olicies may guide or suggest treatment paths without mandating them or running afoul of the prohibition on the corporate practice of medicine."); *Marsillo v. Dunnick*, 683 S.W.3d 387, 390 (Tex. 2024) (explaining that hospital's snakebite treatment guidelines facilitated comprehensive framework for treatment based on physician's assessment of patient's symptoms); *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 383-84 (Tex. App.—Dallas 2013, no pet.) (holding expert report sufficiently opined that hospital breached standard of care by failing to have or enforce certain policies and procedures); *El Paso Healthcare Sys., Ltd. v. Monsivais ex rel. Monsivais*, No. 08-18-00043-CV, 2019 WL 5616973, at *6-7 (Tex. App.—El Paso Oct. 31, 2019, pet. denied) (noting hospital staff could be held liable for injury caused by failure to adhere to "standing orders" or "protocols").

[12] Our discussion of policies in the remainder of this paragraph is responsive to these arguments by the parties. *Cf. post* at 6 n.15 (Bland, J., concurring).

liability.[13] As discussed above, the vicarious liability inquiry is whether the particular tasks that the physician employee negligently performed or failed to perform are ones that the statute prohibits an NPHO from controlling. As we have seen, the statute generally defines the uncontrollable sphere of tasks as the physician's "exercise[] [of] independent medical" or "professional judgment." TEX. OCC. CODE §§ 162.0021, .0022(a). Therefore, when an NPHO is sued because of an employee physician's alleged negligence, its vicarious liability will depend on whether the plaintiff can prove that an exercise of control over the alleged negligence would not interfere with the physician's exercise of independent medical judgment.[14]

Lugo correctly observes that we have rejected as "unworkable" a general framework for vicarious liability that involves "isolating the

---

[13] *See, e.g.*, *Bush*, ___ S.W.3d at ___, slip op. at 23-28; *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 629 (Tex. 2013) ("[D]irect and vicarious liability theories involve different sets of operative facts because the facts required to establish the defendant's vicarious liability, *i.e.*, the acts of the agent and his relationship to the principal, differ from the facts required to establish . . . the defendant's direct liability, *i.e.*, its provision of particular policies and procedures." (cleaned up)). Thus, we agree with our concurring colleagues that an NPHO may not be held *vicariously* liable for injuries caused by a negligent physician due to inadequate NPHO policies. *Post* at 1, 7-9 (Bland, J., concurring). And we agree that any claim for direct liability would require proof of causation. For example, a plaintiff could attempt to show that a reasonable NPHO complying with the standard of care should have had policies in place that, in reasonable medical probability, would have averted an alleged negligent act or omission while respecting medical judgment. We express no view regarding whether such a showing could be made in this case.

[14] We thus disagree with our concurring colleagues that "[v]icarious liability claims against [NPHOs] that allege a physician's medical judgment caused the patient's injury . . . have no merit absent allegations of unlawful interference." *Post* at 1 (Bland, J., concurring).

19

task the worker was performing at the moment of the accident and conducting an independent evaluation of the employer's control with respect to that particular task." *Painter*, 561 S.W.3d at 133. These concerns are well founded for traditional employer–employee relationships in which, as in *Painter*, the employer "was in a position to exert control" over its employee's duties and "simply chose not to do so." *Id.* at 135.

Because the NPHO statute has modified this relationship, however, courts asked to impose vicarious liability must determine whether the NPHO could exercise control over the alleged negligence of its physician employee without interfering with his or her independent medical judgment. To aid courts in this inquiry, the parties can address, for example, (1) whether the NPHO has a right of control regarding the allegedly negligent acts or omissions of its physician employee that led to the alleged injury,[15] and, if so, (2) whether an exercise of such control would interfere with the physician's exercise of independent medical judgment.[16]

---

[15] *See Tidwell*, 867 S.W.2d at 23. As discussed in Part II, the relevant inquiry is whether the NPHO had a right of control, which "may be shown by explicit contractual assignment *or* actual exercise of control." *Shell Oil Co.*, 138 S.W.3d at 292 (emphasis added).

[16] TEX. OCC. CODE §§ 162.0021, .0022(a). The concurrence argues that we are improperly expanding an NPHO's summary judgment burden by requiring it to prove that exercising control over the allegedly negligent acts or omissions of its physician employee would have interfered with his or her exercise of independent medical judgment. *Post* at 11-12 (Bland, J., concurring). To the contrary, this requirement tracks the statutory provisions just cited.

As in other cases, the usual procedural vehicles for resolving this vicarious-liability question will apply. For example, at trial or in response to an NPHO defendant's motion for summary judgment,[17] a plaintiff may seek to show that the NPHO had a right of control over the physician employee's allegedly negligent act or omission that caused the injury by offering evidence of the employee's contract with the NPHO and relevant NPHO policies. A defendant NPHO, in turn, may seek to negate such evidence affirmatively. Or it may seek to establish why, as a matter of law, the NPHO lacked any relevant right of control or that any control the NPHO could lawfully exercise had nothing to do with the alleged injury. The NPHO may likewise show that any such right of control would have intruded on the physician's medical judgment, so that even if vicarious liability may have been authorized absent the statute, it is now impermissible to impose. An NPHO that establishes as a matter of law that the injury's cause truly was an exercise of independent medical judgment, as may often be the case, would be entitled to summary judgment. And in cases where a right to control is both demonstrable and would not interfere with a physician's medical judgment, vicarious liability remains available.[18] The bottom line is that although this Court has disclaimed a "task by task" approach to vicarious liability, the Legislature's modification of that principle for

---

[17] We address the distinction between traditional and no-evidence motions below. *See infra* note 19.

[18] The record and briefs in this case tell us little to nothing about the administrative realities of NPHO practice, so we are not yet in a position to make broader statements about litigation in this context.

NPHOs can be readily accommodated within our existing pleading practice and should not impose an onerous burden on either party.

## IV. The Practice has not established its entitlement to traditional summary judgment under the statutory standard.

Having explained the statutory limits on an NPHO's right of control and thus its vicarious liability, we turn to whether the Practice conclusively proved its entitlement to traditional summary judgment under this standard such that it cannot be held vicariously liable for Dr. Burke's alleged negligence.[19] Lugo agrees with the court of appeals that the Employment Agreement between the Practice and Dr. Burke assigned the Practice a right of control sufficient to trigger vicarious liability for all of Dr. Burke's torts within the course and scope of his employment. The Practice disagrees, pointing to a provision of the agreement stating that Dr. Burke "shall retain the right to exercise [his] independent medical judgment in providing Medical Services to patients." Further, the Practice contends that any right of control it could have was stripped by the agreement's provision that Texas law governs, as our law prohibits the corporate practice of medicine.

We agree in part with the court of appeals' view of the agreement, which provides that Dr. Burke will render medical services to the

_____

[19] Although a plaintiff would have the burden at trial to show the defendant's vicarious liability, the defendant Practice filed a traditional motion for summary judgment arguing that it was not vicariously liable as a matter of law. Thus, it was the Practice's burden to conclusively disprove an essential element of vicarious liability. *See Draughon v. Johnson*, 631 S.W.3d 81, 87-88 (Tex. 2021); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

Practice's patients "as directed" and "in accordance with the [Practice's] protocols, policies and procedures." But the agreement is not the end of the analysis, as the statute provides its "requirements . . . may not be voided or waived by contract." TEX. OCC. CODE § 162.0024(a). Thus, as explained above, we must also consider whether the Practice showed that it could not exercise control regarding Dr. Burke's alleged negligence without interfering with his exercise of independent medical judgment. *See id.* §§ 162.0021, .0022(a).[20]

The Practice did not have the benefit of our explanation of the standard for vicarious liability under this statute when it filed its motion. Instead, it moved for summary judgment based solely on legal grounds, stipulating that its motion did not require resolving any genuine issues of material fact. The Practice's legal position is that the statute entirely prevents NPHOs from controlling physicians' provision of medical care, and thus the Practice cannot be held vicariously liable.

As explained above, however, the statute does not preclude an NPHO from exercising contractual rights to control its physician employees so long as that control does not interfere with the physicians' exercise of independent medical judgment. Given the purely legal focus of the Practice's motion, it is not surprising that the record does not

---

[20] Lugo alleged that the Practice employed Dr. Burke and is vicariously liable for his negligence. She thus put the Practice's right to control Dr. Burke's conduct in issue. To obtain traditional summary judgment, then, the Practice had the burden to prove conclusively that an exercise of control over the alleged negligence would interfere with his exercise of independent medical judgment. This burden does not require the Practice to negate unpleaded claims or allegations, as the concurrence asserts. *See post* at 14 (Bland, J., concurring).

address whether the Practice would necessarily have interfered with the exercise of Dr. Burke's independent medical judgment by exercising a right to control regarding the type of negligence alleged here.[21]  Thus, we conclude the trial court did not err in denying the Practice's motion for summary judgment that it is not subject to vicarious liability.  On remand, the Practice is free to file a new motion for summary judgment with the benefit of our explanation of the legal standard for vicarious liability under this statutory scheme.

## CONCLUSION

We hold the trial court properly denied the Practice's motion for summary judgment.  Because that is also the result reached by the court of appeals, we affirm that court's judgment and remand the cause to the trial court for further proceedings.

J. Brett Busby
Justice

**OPINION DELIVERED:** May 23, 2025

---

[21] We disagree with the concurrence's suggestion that Lugo limited her petition by alleging that each instance of negligence leading to her daughter's injuries resulted from Dr. Burke's exercise of medical judgment.  *Cf. post* at 12-13 (Bland, J., concurring).  Instead, Lugo alleged several failures to act, including failures to secure and monitor the location of a retractor.  Whether Dr. Burke failed in any of the alleged respects and whether any such failures were exercises of independent medical judgment are matters beyond the scope of the purely legal motion the Practice filed, and they remain to be considered on remand.