ACCEPTED
15-25-00215-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/2/2025 11:52 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00215-CV

**IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/2/2025 11:52:01 AM
CHRISTOPHER A. PRINE
Clerk

Samsung Austin Semiconductor, LLC,

*Appellant(s)*,

v.

Ken Paxton, Attorney General of Texas, Texas Commission on Environmental Quality; and Kelly Keel, Executive Director of The Texas Commission on Environmental Quality,

*Appellee(s)*.

On Appeal from the 200th Judicial District Court
Travis County, Texas
No. D-1-GN-22-004532

## APPELLANT'S BRIEF

Danica L. Milios
State Bar No. 00791261
dmilios@jw.com
Jack E. Skaggs
State Bar No. 24051345
jskaggs@jw.com
JACKSON WALKER, LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)

*Counsel for Appellant*

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

*Appellant*

Samsung Austin Semiconductor

Danica L. Milios
State Bar No. 00791261
dmilios@jw.com
Jack E. Skaggs
State Bar No. 24051345
jskaggs@jw.com
Anne Derrig
State Bar No. 24112764
aderrig@jw.com
JACKSON WALKER, LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)

*Appellee*

Ken Paxton, Attorney General of Texas

Martin Cohick
State Bar No. 24134042
martin.cohick@oag.texas.gov
Kimberly Fuchs (former)
State Bar No. 24044140
kimberly.fuchs@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
PO Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1317
(512) 320-0667 (fax)


*Other Parties*

Texas Commission on Environmental Quality (TCEQ), and Kelly Keel,
Executive Director of the Texas Commission on Environmental Quality

Kimberly Gdula
State Bar No. 24052209
kimberly.gdula@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
PO Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1317
(512) 320-0667 (fax)

## TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................i

Index of Authorities................................................................................v

Statement of the Case .........................................................................ix

Statement Regarding Oral Argument ...................................................x

Issues Presented....................................................................................xi

Introduction ..........................................................................................1

Statement of Facts ................................................................................2

I.     Factual history ..............................................................................2

II.    Procedural history.........................................................................5

Standard of Review ...............................................................................7

Summary of Argument..........................................................................8

Argument.............................................................................................10

I.    Reversal is required; Samsung's reports are exempt from PIA
disclosure...................................................................................10

    A.    Samsung's reports are confidential audit reports. ...............13

        1.    Samsung's investigation was "voluntary"
under the plain text of the Audit Privilege
Act...............................................................................14

        2.    Texas Water Code § 26.039 and TCEQ's
implementing rules confirm Samsung's
extended environmental investigation was
voluntary. ...................................................................16

3. The Attorney General's interpretation fails................20

B. Samsung did not expressly waive its privilege; its reports are exempt from PIA disclosure..............25

    1. Any "waiver" under the Audit Privilege Act must be "express."........................25

    2. Regardless, Samsung disclosed its reports to TCEQ under a claim of confidentiality.......................29

    3. The Attorney General's extra-textual interpretation fails........................30

        a. Public knowledge of the discharge does not waive Samsung's audit report confidentiality...................30

        b. The Audit Privilege Act does not impose a deadline to assert confidentiality.......................31

        c. TCEQ's policy of not accepting "confidential" material is beside the point.........32

II. Public policy weighs in favor of maintaining Samsung's privilege, not PIA disclosure.........................34

Prayer................35

Certificate of Compliance................36

Certificate of Service................37

Index to Appendix................38

**Page(s)**

**Cases**

*Alford, Meroney & Co. v. Rowe,*
    619 S.W.2d 210 (Tex. App.—Amarillo 1981,
    writ ref'd n.r.e.) .................................................................................... 27

*City of Rockwall v. Hughes,*
    246 S.W.3d 621 (Tex. 2008) ............................................................... 32

*EIS Dev. II, LLC v. Buena Vista Area Ass'n,*
    715 S.W.3d 689 (Tex. 2025) ............................................................... 26

*Fort Worth Transp. Auth. v. Rodriguez,*
    547 S.W.3d 830 (Tex. 2018) ............................................................... 11

*In re Dallas Cnty.,*
    697 S.W.3d 142 (Tex. 2024) ............................................................... 24

*In re Ford Motor Co.,*
    211 S.W.3d 295 (Tex. 2006) (orig. proceeding) ................................. 31

*In re Univ. of Tex. Health Ctr. at Tyler,*
    33 S.W.3d 822 (Tex. 2000) (orig. proceeding) ................................... 31

*Malouf v. State ex rels. Ellis,*
    694 S.W.3d 712 (Tex. 2024) ............................................................... 11

*Marino v. Lenoir,*
    526 S.W.3d 403 (Tex. 2017) ............................................................... 26

*S. Methodist Univ. v. S. Cent. Jurisdictional Conf. of the U.S.,*
    716 S.W.3d 475 (Tex. 2025) ................................................................. 7

*Sampson v. Univ. of Tex.,*
    500 S.W.3d 380 (Tex. 2016) ............................................................... 26

*San Jacinto River Auth. v. City of Conroe,*
    688 S.W.3d 124 (Tex. 2024) ............................................................... 26

*State by & Through Office of Att'y Gen. of Tex. v.*
*City of San Marcos,*
714 S.W.3d 224 (Tex. App.—15th Dist. 2025, pet. denied)................24

*Sunstate Equip. Co. v. Hegar,*
601 S.W.3d 685 (Tex. 2020) ...........................................................11

*Teal Trading & Dev., L.P. v. Champee Springs Ranches*
*Prop. Owners Ass'n,*
593 S.W.3d 324 (Tex. 2020) .....................................................26, 27

*Tenneco Inc. v. Enter. Prods. Co.,*
925 S.W.2d 640 (Tex. 1996) ....................................................27, 28

*Tex. Real Estate Comm'n v. Marla Nunally Kaufman Homes, LLC,*
No. 15-24-00030-CV, 2025 WL 409504 (Tex. App.—15th Dist.
Feb. 6, 2025, no pet.)...................................................... 10, 11

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v.*
*Tex. Med. Ass'n,*
511 S.W.3d 28 (Tex. 2017) .............................................................15

*Valence Operating Co. v. Dorsett,*
164 S.W.3d 656 (Tex. 2005) .........................................................7, 8

**Statutes**

Tex. Gov't Code § 552.001(a)..............................................................34

Tex. Gov't Code § 552.125 ......................................................11, 25, 34

Tex. Health & Safety Code § 382.041(a)...............................................32

Tex. Health & Safety Code § 1101.001 .................................................11

Tex. Health & Safety Code § 1101.004 .................................................25

Tex. Health & Safety Code § 1101.002(a)........................... 12, 14, 23, 34

Tex. Health & Safety Code § 1101.002(b)..............................................33

Tex. Health & Safety Code § 1101.003(a)(3) ................................ *passim*

Tex. Health & Safety Code § 1101.003(e) ...............................................34

Tex. Health & Safety Code § 1101.051(b) ...............................................12

Tex. Health & Safety Code § 1101.051(b)(1)(B)......................................12

Tex. Health & Safety Code § 1101.051(b)(2)............................................12

Tex. Health & Safety Code § 1101.051(b)(3)..................................... 12, 23

Tex. Health & Safety Code § 1101.051(d) ...............................................32

Tex. Health & Safety Code § 1101.101 ...................................................25

Tex. Health & Safety Code § 1101.101(a) ...............................................15

Tex. Health & Safety Code § 1101.101(b) ...............................................34

Tex. Health & Safety Code § 1101.102(a) ................................... 14, 15, 22

Tex. Health & Safety Code § 1101.103(a)....................................... xi, 25, 26

Tex. Health & Safety Code § 1101.103(b)(3)............................... 25, 29, 31

Tex. Health & Safety Code § 1101.105(b) ....................................... 22, 33

Tex. Health & Safety Code § 1101.151 ...................................................34

Texas Water Code § 26.039(b)................................................................16

Texas Water Code § 26.039(f) ...............................................................17

**Regulations**

30 Tex. Admin. Code § 327.3.................................................................18

30 Tex. Admin. Code § 327.3(b) ............................................................17

30 Tex. Admin. Code § 327.3(c) ............................................................17

30 Tex. Admin. Code § 327.3(d)(3) ........................................................17

30 Tex. Admin. Code § 327.3(d)(4) ........................................................17

30 Tex. Admin. Code § 327.3(d)(5) ......................................................17

30 Tex. Admin. Code § 327.3(d)(7) ......................................................17

30 Tex. Admin. Code § 327.3(d)(8) ......................................................17

30 Tex. Admin. Code § 327.3(d)(10) .....................................................17

30 Tex. Admin. Code § 327.3(e)............................................................17

30 Tex. Admin. Code § 327.5................................................................18

30 Tex. Admin. Code § 327.5(a) ...................................................2, 3, 17

30 Tex. Admin. Code § 327.5(b) .................................................2, 18, 20

30 Tex. Admin. Code § 327.5(c)..................................................2, 18, 19

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law: The
Interpretation of Legal Texts* (2012) .................................................24

Black's Law Dictionary (12th ed. 2024)
https://www.merriam-webster.com/dictionary/voluntary............ 15, 16

## STATEMENT OF THE CASE

*Nature of the Case*:

Appellant, Samsung Austin Semiconductor, brought suit for judicial review of Attorney General of Texas open records ruling OR2022-26880, under Texas Government Code section 552.325. CR.4.

*Trial Court*:

Case D-1-GN-22-004532 in the 200th Judicial District Court of Travis County, Texas; Honorable Jan Soifer, Presiding

*Course of Proceedings*:

The parties filed cross motions for summary judgment pursuant to a Rule 11 agreement specifying the controlling legal issues. CR.106, 110, 153, 258, 269, 312.

*Trial Court Disposition*:

The trial court granted the Attorney General's motion. CR.339. Samsung filed a motion to modify the judgment, which was overruled by operation of law. CR.340. Samsung timely filed its notice of appeal. CR.350.

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is unnecessary. The issues present straight-forward interpretation of unambiguous statutory language. Tex. R. App. P. 39.7.

The Texas Public Information Act ("PIA") makes government-held information available to the public "unless otherwise expressly provided by law." Certain confidential information is exempt from disclosure, meaning the government may not release it to the public. One such category of confidential information is an "audit report" under the Texas Environmental, Health, and Safety Audit Privilege Act. Tex. Health & Safety Code § 1101.001–.158.

The Audit Privilege Act defines an "environmental audit" as "a systematic voluntary evaluation, review, or assessment of compliance with environmental or health and safety laws." *Id.* § 1101.003(a)(3). A report generated by the audit is privileged. *Id.* § 1101.101(a), (b). The audit report privilege holder can "expressly" waive the privilege. *Id.* § 1101.103(a). But disclosure of an audit report to a governmental official or agency does not waive the privilege if disclosure is "made under a claim of confidentiality." *Id.* § 1101.103(b)(3).

Samsung discovered a slow wastewater release at its Austin facility. After reporting the release to all appropriate governmental agencies, Samsung hired an independent contractor to investigate the incident and to conduct additional long-term analysis and monitoring. The contractor prepared two initial reports, which Samsung shared with TCEQ (one of which was in draft form).

A reporter submitted a PIA request for the reports to TCEQ. The Attorney General concluded TCEQ must produce them. On judicial review in the trial court, the parties filed cross motions for summary judgment concerning the applicability of the audit report privilege. Did the trial court err in granting summary judgment in favor of the Attorney General because:

1.    the information at issue is a confidential audit report; and

2.    Samsung did not expressly waive its privilege, but disclosed the information to TCEQ under a "claim of confidentiality."

## INTRODUCTION

When a company such as Samsung takes it upon itself to study its environmental law compliance, the Legislature protects the resulting reports or "audits" from disclosure. Why? Because companies might find problems that need to be addressed. If companies had to publicly release any deficiencies found through their own self-initiated investigation, why would they investigate in the first place? The Legislature removed that impediment by granting statutory privilege to reports generated from voluntary evaluations of environmental law compliance. That confidentiality extends to the PIA via the audit report privilege.

Samsung conducted an extensive assessment of its environmental law compliance after discovering a slow wastewater release. No state law required the evaluation. The evaluation generated multiple reports—two of which are at issue here. Samsung's reports are confidential and privileged under the plain text of the Audit Privilege Act. The only way for the information to have lost its privilege would have been for Samsung to have expressly waived it. Samsung didn't do that.

1

The trial court erred in granting the Attorney General's motion for summary judgment and ordering disclosure of Samsung's confidential and privileged reports. The Court should reverse.

**STATEMENT OF FACTS**

## I.     Factual history

Samsung discovered a slow wastewater release at its Austin facility on January 14, 2022 and notified TCEQ that evening by phone. 30 Tex. Admin. Code § 327.3(b), (c) (requiring discharge notification within 24 hours by "any reasonable manner," including by phone).[1] Samsung immediately launched an internal investigation pursuant to company policy and retained Arcadis U.S., Inc. to assist. CR.129. Samsung identified and repaired the cause of the release (a pump). *Id.* Within days Arcadis determined the water quality of the affected area had returned to normal conditions, as required by 30 Tex. Admin. Code § 327.5(a) (requiring discharge abatement and containment and "reasonable response actions"). *Id.*

---

[1] Samsung also notified Texas Parks and Wildlife, the City of Austin, and the U.S. Army Corps of Engineers. 1.CR.128–29.

TCEQ and the City of Austin initiated their own investigations. *Id.* Samsung cooperated with both and provided TCEQ daily updates regarding sampling, analysis, and equipment operation and maintenance. *Id.* TCEQ gave Samsung its initial findings via an "exit interview" form on February 1 and confirmed on February 10 that Samsung's daily updates satisfied Samsung's final reporting obligations under 30 Tex. Admin. Code § 327.5(b), (c). *Id.*

Separately, despite resolution of the incident, Samsung and Arcadis continued their analysis and monitoring of the affected area. *Id.* Arcadis produced two initial reports: a February 2022 Acid Wastewater Release Ecological Assessment Report ("February Report") and a May 2022 Ecological Stream Surveys Report ("May Report"). CR.130. Samsung and Arcadis continued to monitor and study the affected area for the next two years. *Id.* During that time, Samsung and Arcadis completed unrequired ecosystem enhancements and additional wildlife surveys. Arcadis also produced multiple other memos and reports. *Id.*[2]

---

[2] The subsequent other memos and reports are not at issue here.

TCEQ did not order the Samsung/Arcadis investigation. *Id.* But to facilitate TCEQ's investigation, and upon TCEQ's request, Samsung shared much of the information it obtained with TCEQ. *Id.* Samsung provided the February Report and a draft version of the May Report in early March 2022. CR.130, 142. The transmittal email included a confidentiality statement that the message may contain privileged and confidential information and any "unauthorized dissemination, distribution, copying or use of the information contained in this communication is strictly prohibited." CR.145, 155. The draft May Report was marked "Draft for Internal and Client Review," with a "DRAFT" watermark on each page, and was missing several sections labeled "pending." CR.115. As the Attorney General acknowledged, "the reports contained some markings purporting to make them confidential" "throughout" the documents. CR.155.

TCEQ concluded its investigation and issued a report on May 17, 2022, attaching (among other things) the February Report and draft May Report ("Samsung's reports"). CR. 133, 140 (listing attachments), CR.156 (noting Samsung's reports attached as Attachment C). Shortly thereafter, on June 6, Samsung sent TCEQ a letter clarifying and

reasserting the confidential nature of Samsung's reports. CR.147. Just over a week later on June 15, a reporter sent a PIA request for the TCEQ report attachments, including Samsung's reports. CR.193.

TCEQ requested an Attorney General opinion concerning whether Samsung's reports could be released. CR.189. Samsung provided comments to the Attorney General, asserting its reports were confidential and exempt from disclosure. CR.197. The Attorney General concluded Samsung's reports were not protected from disclosure and that TCEQ must release them. CR.198.

## II. Procedural history

Samsung filed suit for injunctive and declaratory relief to stop the disclosure of its reports. CR.4. The trial court entered a temporary restraining order, which the parties agreed to extend several times. CR.14, 31, 51, 83, 92, 102. The parties eventually agreed by Rule 11 to present the case on cross motions for summary judgment on two narrowed issues:

(1)  Whether the information at issue was "a systematic[3] voluntary evaluation, review, or assessment of compliance" such that it satisfies the definition of

---

[3] The Rule 11 inadvertently uses the word "systemic" instead of "systematic." CR.107.

"environmental or health and safety audit" found in Tex. Health & Safety Code § 1101.003(a); and

(2)     Whether Samsung disclosed the information at issue to TCEQ under a "claim of confidentiality" as contemplated by Texas Health & Safety Code chapter 1101.

CR.107, 110, 153, 258, 269, 312.

Samsung argued its reports were protected from disclosure by the PIA and the Audit Privilege Act because the underlying evaluation and assessment was entirely voluntary. CR.119–21. That is, no state law required the investigation and TCEQ did not otherwise order Samsung to do it. *Id.* The results of the voluntary evaluation—Samsung's reports— were confidential under the audit report privilege. Samsung argued it did not waive its privilege by disclosing them to TCEQ because Samsung did so under a "claim of confidentiality." CR.122. In particular, the email conveying the documents and the documents themselves reflected their confidentiality. And when it became apparent to Samsung that TCEQ did not share that view, but before TCEQ received any request for PIA release, Samsung reiterated its confidentiality claim. *Id.*

In contrast, the Attorney General contended because Samsung was required by TCEQ rule to take unspecified "reasonable action" to identify and address the wastewater release, Samsung's chosen response (an

6

investigation that went well beyond the scope of identifying and responding to the release) was actually "involuntary." CR.161–63. According to the Attorney General, Samsung was "forced" to create the reports not because any law required the reports, but because the reports resulted from Samsung's "reasonable response" to the discharge. CR.161. The reports generated from the investigation were therefore outside the scope of the audit report privilege. CR.161–63. The Attorney General also argued Samsung expressly waived any privilege because TCEQ already knew about the release, because Samsung's confidentiality clarifying letter did not accompany Samsung's initial disclosure to TCEQ, and because TCEQ thought Samsung had waived its privilege. CR.163–64.

The trial court granted the Attorney General's motion. CR.339. Samsung filed a motion to modify the judgment, CR.340, which was overruled by operation of law. Samsung filed its notice of appeal. CR.350.

## STANDARD OF REVIEW

The Court reviews summary judgments *de novo. S. Methodist Univ. v. S. Cent. Jurisdictional Conference of the United States*, 716 S.W.3d 475, 483 (Tex. 2025) (citing *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005)). When both parties move for summary judgment on the

same issues and the trial court grants one motion and denies the other, the Court considers the summary judgment evidence presented by both sides and determines all questions presented. *Valence*, 164 S.W.3d at 661. If the Court determines the trial court erred, the Court must render the judgment the trial court should have rendered. *Id.*

## SUMMARY OF ARGUMENT

After discovering a slow wastewater release, Samsung undertook two lines of action: Samsung: (1) immediately reported the event and took all actions required by state law and TCEQ rules to stop the release and remediate the affected areas; and (2) launched a separate, extended (two-year), voluntary evaluation of its environmental law compliance. Yes, there was overlap. Yes, Samsung provided much of the information it learned though its separate study to TCEQ. But Samsung was not required to do the deep-dive into its environmental law compliance. No statute and no TCEQ rule *required* Samsung to do anything but report the details of the discharge, conduct "reasonable response actions" to remediate its effects, tell TCEQ how it planned to do that, and tell TCEQ when the job was done.

8

Samsung did all those things by submitting daily reports to TCEQ, which TCEQ also accepted as full compliance with Samsung's final reporting obligation. That was the end of Samsung's required statutory and rule-based response.

Just as the Legislature hoped, Samsung exceeded its mandated obligations. For the next two years, Samsung studied the surrounding environment and affected wildlife and even made additional ecosystem enhancements to the affected areas. TCEQ required none of that.

That process resulted in multiple reports, two of which are at issue here. Because those reports resulted from Samsung's voluntary evaluation of its compliance with environmental safety laws, the reports are protected from PIA disclosure under the audit report privilege.

Samsung did not waive its privilege by disclosing the reports to TCEQ. The Audit Privilege Act contemplates privilege waiver only when "expressly" done by the privilege holder. The Act even permits a privilege holder to disclose its audit report to a governmental entity, but still maintain the privilege, by disclosing under a "claim of confidentiality."

Samsung's reports are thus protected twice over. It did nothing to "expressly" waive its privilege. When it shared its reports (per TCEQ

9

request), the email transmittal letter contained standard confidentiality language. One of the reports was not even complete. It was marked "DRAFT" and "Internal for Client Review." And even if an implied waiver could be possible (contrary to the statute's terms), the uncontroverted timeline shows Samsung quickly reminded TCEQ its reports were confidential once it became apparent TCEQ was treating them otherwise. That notification precludes any "implicit waiver" here.

The trial court erred in granting the Attorney General's summary judgment motion. The Court should reverse, hold Samsung's reports are privileged and confidential under the Audit Privilege Act and protected from PIA disclosure, and render judgment in favor of Samsung.

## ARGUMENT

### I. Reversal is required; Samsung's reports are exempt from PIA disclosure.

The definition of an audit report under the Audit Privilege Act is a matter of statutory interpretation. *Tex. Real Estate Comm'n v. Marla Nunally Kaufman Homes, LLC*, No. 15-24-00030-CV, 2025 WL 409504, at *4 (Tex. App.—15th Dist. Feb. 6, 2025, no pet.). The Court's "primary objective is to effectuate the Legislature's intent." *Id.* Looking to the "plain text of the statute," the Court gives "meaning to 'every word,

10

clause, and sentence.'" *Id.* (quoting *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–90 (Tex. 2020)). The "'common, ordinary meaning'" of the statute's words control "unless doing so would lead to an absurd result." *Id.* (quoting *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024)).

The upshot of these bedrock statutory interpretation rules is simple: courts construe statutory language "in a way that does not render any of it meaningless, because 'every word or phrase is presumed to have been intentionally used with a meaning and purpose.'" *Id.* (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)).

The PIA defines the extent of the public's entitlement to government-held information. Although most information is available on request, confidential or privileged information is not. The "audit report privilege," defined by the Audit Privilege Act is one such privilege. Tex. Health & Safety Code §§ 1101.001, .101.

Stated simply, an "audit report" is a report generated as result of a voluntary assessment of a party's compliance with environmental laws. *Id.* § 1101.003(a)(3). An audit report is, in turn, exempt from PIA disclosure. Tex. Gov't Code § 552.125. The Legislature protects this

11

information "to encourage voluntary compliance with environmental [] laws." Tex. Health & Safety Code § 1101.002(a).

An audit report "may" contain multiple types of information. *Id.* § 1101.051(b). For example, an audit report "may include" (among other things) findings, conclusions, and recommendations, *id.* § 1101.051(b)(1)(B), memoranda or documents analyzing that information, *id.* § 1101.051(b)(2), and "an implementation plan or tracking system to correct past noncompliance, improve current compliance, or prevent future noncompliance," *id.* § 1101.051(b)(3).

True enough, the audit report privilege can be waived. But the statute requires "express" waiver by the privilege holder. Indeed, that is consistent with the common law, which always requires intentional— express and unequivocal—actions of the privilege holder or, at a minimum, silence or inaction for so long as to constitute implicit waiver. The Audit Privilege Act provides extra protection by permitting a privilege holder to disclose an audit report to a governmental agency, like TCEQ, but still retain the privilege, so long as the disclosure is under a "claim of confidentiality."

That aspect of the Audit Privilege Act further confirms the Legislature's intent to encourage environmental law compliance. Private industry is allowed to study its actions, tell the government what it learns, but still maintain audit report privilege status. The confidentiality provision is designed to protect the holder of the privilege, not create a trap for the unwary.

Samsung's reports are confidential under the Audit Privilege Act and exempt from disclosure under the PIA. Samsung's disclosure of the reports to TCEQ on TCEQ's request did not expressly waive the privilege. The Attorney General's counter-textual view of the privilege cannot overcome the statute's plain text. The trial court's summary judgment must be reversed.

## A. Samsung's reports are confidential audit reports.

The text of the Audit Privilege Act directs one conclusion: Samsung's reports resulted from Samsung's voluntary investigation of its own environmental law compliance. The reports fall squarely within the statutory definition, entitling Samsung to the privilege.

### 1. Samsung's investigation was "voluntary" under the plain text of the Audit Privilege Act.

The critical text here is the definition of an "audit" that gives rise to a confidential audit report. Section 1101.003(a)(3) of the Audit Privilege Act defines an "audit" as a "systematic *voluntary* evaluation, review, or assessment of compliance with environmental [] laws." Tex. Health & Safety Code § 1101.003(a)(3) (emphasis added). The parties' disagreement centers on the meaning of the word "voluntary."

The Audit Privilege Act does not define the term "voluntary." But a "voluntary" evaluation is the heart of the privilege. The Legislature's end-game for the Audit Privilege Act is to "encourage *voluntary* compliance with environmental" laws. *Id.* § 1101.002(a) (emphasis added). Voluntary compliance and voluntary study are rewarded through confidentiality and privilege.

The Legislature confirms this in § 1101.102(a), too. That provision specifies the audit report privilege *does not* apply to "a document, communication, datum, or report or other information *required by a regulatory agency to be collected*, developed, maintained, or reported under a federal or state environmental or health and safety law." *Id.* § 1101.102(a) (emphasis added).

14

The two provisions go hand in hand. If an entity is "required" to gather information, a report done in compliance with that requirement is not voluntary, and it is therefore not protected by the audit report privilege. *Id.* But if an entity is not "required" to gather data, but does so during a "voluntary" investigation of the entity's environmental law compliance, then the opposite is true. *Id.* § 1101.003(a)(3). The report generated from voluntarily gathered information is confidential and privileged. *Id.* § 1101.101(a). The text of the Audit Privilege Act thus makes clear "voluntary" simply means "not required" by state law or a state agency regulation.

This is consistent with ordinary usage of the term "voluntary." Indeed, in the absence of a contrary statutory definition, the "common, ordinary meaning" controls. *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34–35 (Tex. 2017). "Voluntary" means "not impelled by outside influence," and "without valuable consideration or legal obligation; gratuitous." Black's Law Dictionary (12th ed. 2024). Other dictionaries define "voluntary" to mean "proceeding from the will or from one's own choice or consent," "acting or

15

done of one's own free will without valuable consideration or legal obligation," and "having power of free choice."[4]

In short, there is no technical or complicated meaning of "voluntary" in the Audit Privilege Act. That word means what everyone thinks it means: not required, but done as a result of the decision maker's choice. That is what happened here. No state law or TCEQ rule required Samsung's extended investigation. It was "voluntary."

> **2. Texas Water Code § 26.039 and TCEQ's implementing rules confirm Samsung's extended environmental investigation was voluntary.**

Texas Water Code § 26.039 and TCEQ's implementing rules confirm Samsung's two-year environmental study was voluntary. Nothing in these provisions required Samsung to undertake the study. All reports generated from the study are confidential and privileged, including the two initial reports at issue.

Texas Water Code § 26.039(b) requires a responsible person to notify TCEQ about an "accidental discharge" within 24 hours of the release, including location, volume, and content. Tex. Water Code § 26.039(b). Section 26.039(f) then leaves to TCEQ the task of

---

[4] https://www.merriam-webster.com/dictionary/voluntary

16

implementing notification rules. *Id.* § 26.039(f). *See generally* CR.162

(Attorney General summary judgment motion citing authority).

TCEQ's implementing rules list the actions required following a

release. The person responsible for the release must:

- notify TCEQ about the release "as soon as possible, but not later than 24 hours after discovery," 30 Tex. Admin. Code § 327.3(b), using "any reasonable manner," *id.* § 327.3(c);

- identify (among other details) the released substance, *id.* § 327.3(d)(3), its source, *id.* § 327.3(d)(7), and the impacted area, *id.* § 327.3(d)(8);

- describe the quantity and duration of the incident, *id.* § 327.3(d)(4), (5);

- describe the "actions that have been taken, are being taken, and will be taken to contain and respond to the release," *id.* § 327.3(d)(10); and

- update TCEQ as necessary regarding any changes to the release response, *id.* § 327.3(e).

The responsible person must also: (1) abate and contain the spill,

(2) cooperate with TCEQ and other governmental personnel; and

(3) begin reasonable response actions. *Id.* § 327.5(a). "Reasonable

response actions" may include (1) arriving at the scene; (2) initiating

efforts to stop the release; (3) minimizing and neutralizing the effect of

the release; (4) removing the released substance; and (5) managing the

release material. *Id.*

17

If TCEQ or another governmental entity requests it, the responsible person must provide "a verbal or written description, or both, of the planned response and all actions taken *before*" TCEQ or other government officials arrive. *Id.* § 327.5 (b) (emphasis added). And "when" a governmental entity requests this information, "it is subject to *possible additional* response actions" required by TCEQ, which may include "further response actions by the responsible person," and "subsequent reports on the response actions." *Id.* § 327.5(b)(1), (3) (emphasis added).

Finally, the responsible person is required to submit—within 30 days of the release (subject to extension)—"written information, such as a letter," describing the release details and reporting the adequacy of the response. *Id.* § 327.5(c). TCEQ is permitted to request additional information at this stage, too. *Id.*

Said simply, a person responsible for an accidental wastewater release must immediately notify TCEQ (and other governmental entities) about the release details, stop it, get a plan to contain and remediate the area affected, and deal with the release material. *Id.* §§ 327.3, 327.5. And within 30 days (unless the deadline is extended) the responsible person

must submit written information summarizing the actions and demonstrating response completeness. *Id.* § 327.5(c).

Nothing in TCEQ's long list of requirements is anything resembling "start a two-year study of environmental law compliance." TCEQ requires no report of any kind. Rather, unless TCEQ requires a responsible person to take additional action, the immediate response actions through the final written submission (summarizing those actions and demonstrating response completion) constitute the universe of the responsible person's "required" activities.

The uncontroverted facts demonstrate Samsung complied with all required obligations. Samsung notified TCEQ about the release within 24 hours, repaired the cause, and, within days, restored the affected area to normal conditions. CR.128–29. Samsung provided TCEQ with daily updates regarding its assessments, sampling and analysis, and equipment operation and maintenance. CR.129. On February 10, less than one month after the release, TCEQ told Samsung its daily updates satisfied Samsung's "final reporting" obligation. *Id.*

TCEQ's rules require *actions*; but they do not define how a responsible person must achieve those actions. The rules didn't require

Samsung to hire Arcadis at all, much less to engage in additional research and study of Samsung's environmental law compliance. TCEQ was authorized to require additional response actions or reports as part of its investigation, 30 Tex. Admin. Code § 327.5(b), but it didn't. So the additional study and investigation undertaken by Samsung—alone or through is contractor, Arcadis—was, by definition, "voluntary."

The reports at issue were generated as a result of Samsung's voluntary study of its environmental law compliance—well beyond all statutory and TCEQ rule requirements to identify and remediate the accidental discharge and affected area. Samsung's reports are confidential and privileged audit reports under the plain terms of the Audit Privilege Act.

### 3.    The Attorney General's interpretation fails.

The Attorney General contends the Audit Privilege Act does not apply to Samsung's reports because they arose from Samsung's engagement of Arcadis in response to the accidental discharge. According to the Attorney General, Samsung was required by Texas Water Code § 26.039 and TCEQ rules to take "reasonable response actions" in light of the discharge. Because Samsung elected to hire Arcadis to help Samsung

20

respond to the discharge, Arcadis's additional study—over and above Samsung's statutory and rule-based obligations to identify and remediate the discharge—was not voluntary. Samsung was somehow "forced" to create the resulting reports. CR.161. Thus, anything Samsung did (directly or indirectly) as a result of the discharge was not "voluntary" and any report generated by that effort doesn't qualify as a privileged audit report. CR.161–63, 259–61, 314–15.

The Attorney General's logic goes like this: responsible persons "are required to take some type of reasonable response action" after a discharge. CR.315. "[T]he investigation that produced the reports was prudent and triggered by the spill" and was aimed at "determining the probable cause of the spill" and "taking steps to prevent a reoccurrence." CR.315 (citations omitted). So, "[a]lthough Samsung may not have been *required to create* these specific reports in the precise manner that they did, they were *required to do something* like this." *Id.* (emphasis added). According to the Attorney General, if a party has to "do something," whatever it choses becomes involuntary, even though the choice far exceeds any statutory or rule requirements.

21

That position cannot be squared with the plain text of the Audit Privilege Act. The Act defines a protected, confidential report as one arising from a "voluntary" evaluation of environmental law compliance. Tex. Health & Safety Code § 1101.003(a)(3). In contrast, information "*required*" to be "collected, developed, maintained, or reported" is not protected by the privilege. *Id.* § 1101.102(a)(1). Plainly, if a party is "required" to collect information, doing so is not "voluntary." So for example, Samsung's 24-hour response and subsequent daily reports are not protected because they were—in fact—required. And in that case, TCEQ "may review information *that is required* to be available under a specific state or federal law, *but that review does not waive or eliminate the administrative or civil evidentiary privilege if applicable*." Tex. Health & Safety Code § 1101.105(b) (emphasis added).

Thus the Audit Privilege Act expressly permits parties like Samsung to undertake voluntary environmental study that aligns with required action in response to a discharge, just as Samsung did here. Doing so does not morph the voluntary actions into "involuntary" "requirements" and it does not strip the privilege.

The Attorney General tortures the statute and the ordinary meaning of "voluntary" to argue Samsung was "required to do *something*" so whatever it *chose* became involuntary. Samsung was required to "take reasonable action" in response to the discharge. The required actions are listed in 30 Tex. Admin. Code § 327. Samsung did those things. But it also went over and above the requirements and undertook a two-year extensive evaluation of its environmental law compliance. Those actions—and the resulting reports—were voluntary.

Nor (as the Attorney General has argued) does the fact that the reports may have addressed steps "to prevent a reoccurrence" undermine the voluntary nature of the investigation. CR.259–60. The Audit Privilege Act expressly includes a "plan" to "prevent future noncompliance" in the list of what "may" be included in a confidential audit report. Tex. Health & Safety Code § 1101.051(b)(3). That is the point of the audit privilege. *Id.* § 1101.002(a).

Tellingly, the Attorney General has not cited to any statute or TCEQ rule requiring Samsung to create, or to commission the creation of, any reports in response to an accidental discharge. And it points to no statutory or rule text creating the "if you must take reasonable action,

23

then whatever you chose is involuntary" rule. Instead, the Attorney General has advocated for a "fairer, broader view of the actions required of a person responsible for a spill," citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 355–58 (2012), for the supposed "rule" that "legal texts should be read fairly and not strictly." CR.314.

But Scalia and Garner do not call for a "fairer, broader" view of "legal texts." As this Court and the Texas Supreme Court have recognized, statues are interpreted "by discerning the 'fair meaning of the text, not the hyperliteral meaning of each word in the text.'" *State by & Through Office of Att'y Gen. of Tex. v. City of San Marcos*, 714 S.W.3d 224, 237 (Tex. App.—15th Dist. 2025, pet. denied) (citing *In re Dallas Cnty.*, 697 S.W.3d 142, 158 (Tex. 2024), and quoting Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 356 (cleaned up).

"Voluntary" under the Audit Privilege Act means voluntary, not required, or done according to one's own free will. *Supra* I.A.1. The law requires certain actions and a "reasonable response." It does not require an environmental investigation, and it does not require a report. The fact

24

that Samsung did both as part of its *chosen* reasonable response cannot make the reports "involuntary." The resulting reports are privileged.

**B.** **Samsung did not expressly waive its privilege; its reports are exempt from PIA disclosure.**

Because Samsung's audit reports are confidential and privileged under the Audit Privilege Act, Tex. Health & Safety Code §§ 1101.003(a)(3), .004, .101, they are protected from PIA disclosure, Tex. Gov't Code § 552.125. The privilege established by the Audit Privilege Act can be waived—but only by express waiver by the holder of the privilege. Even disclosure of an audit report to a governmental entity does not constitute "waiver," so long as the privilege holder discloses the report "under a claim of confidentiality." Tex. Health & Safety Code § 1101.103(a), (b)(3). Samsung did not expressly waive its privilege, but rather disclosed the reports to TCEQ "under a claim of confidentiality."

**1.** **Any "waiver" under the Audit Privilege Act must be "express."**

The plain terms of the Audit Privilege Act control here, too. Section 1101.103 defines the statutory "exception" to the privilege, and it could not be any clearer: "The [audit report privilege] does not apply to the extent the privilege is *expressly waived* by the owner or operator who

25

prepared the audit report or caused the report to be prepared." Tex. Health & Safety Code § 1101.103(a) (emphasis added).

While the Audit Privilege Act does not define what constitutes "express waiver," the common law does. In the absence of a contrary, statutory meaning, "[w]hen the Legislature uses language that tracks the common law, [the courts] generally infer that the Legislature intended to import the common-law understanding of that language." *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 134 (Tex. 2024) (citing *Sampson v. Univ. of Tex.*, 500 S.W.3d 380, 387 (Tex. 2016)); *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017) (courts "construe statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles")).

It is well established at common law that "waiver" of a privilege "is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 715 S.W.3d 689, 699 (Tex. 2025) (quoting *Teal Trading & Dev., L.P. v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 334 (Tex. 2020)). Waiver "is a question of intent, examining whether a party's conduct, in light of the surrounding facts and circumstances, is

26

*unequivocally inconsistent* with claiming" a right. *Teal*, 593 S.W.3d at 334–35 (emphasis added).

Accordingly, "waiver" of a privilege under the common law can be accomplished in two ways: "express renunciation of a known right" or through "[s]ilence or inaction, for so long a period as to show an intention to yield the known right. " *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (citing *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.)). Both types of waiver result from intentional conduct. Neither happened here.

First, the language of the Audit Privilege Act contemplates only "express" waiver. Samsung did not engage in any conduct amounting to "express renunciation" of its privilege. Samsung disclosed its reports to TCEQ only upon request, CR.130, under email cover noting the privileged nature of the attachments, CR.145, 155, and with markings on one of the reports noting "Draft for Internal and Client Review," CR.115. As even the Attorney General admits, Samsung's reports "contained some markings purporting to made them confidential" "throughout" the documents. CR.155. Samsung's actions, "purporting" to maintain the confidentiality of its documents are not "unequivocally inconsistent" with

maintaining its privilege. *Tenneco*, 925 S.W.2d at 643. Quite the opposite. Samsung alerted TCEQ that it considered its reports confidential and disclosed them to TCEQ under those terms.

Second, assuming, for the sake of argument, the audit report privilege could be abandoned by implicit waiver—shown by intentional silence or inaction for a "long period of time," *id.*—Samsung didn't do that either. Less than one month of TCEQ issuing its report, attaching Samsung's confidential and privileged reports, Samsung submitted a letter reasserting the confidential nature of those reports. CR.147. As a matter of law, near immediate reassertion of the privilege is not silence or inaction for a long period of time to constitute waiver. *Cf. Tenneco*, 925 S.W.2d at 643 (non-assertion of a contract right for three years was "extended inaction" sufficient to constitute waiver).

None of Samsung's conduct comes close to "express wavier" of its privilege under the common law, as implemented by the Audit Privilege Act. Even if Samsung could lose its privilege through long-term inaction, that didn't happen either. Samsung did not waive its privilege.

## 2. Regardless, Samsung disclosed its reports to TCEQ under a claim of confidentiality.

In addition to requiring "express" waiver to renunciate an audit report privilege, the Audit Privilege Report permits the holder of the privilege to disclose a protected document to a governmental entity "under claim of confidentiality," and still maintain the privilege. Tex. Health & Safety Code § 1101.103(b)(3). Samsung's reports are protected by this provision, too.

For the same reasons that Samsung's report disclosure cannot be considered "express waiver" of its audit report privilege, Samsung submitted its reports to TCEQ "under a claim of confidentiality." Samsung disclosed its reports only upon request, with email notification stating the reports contained confidential information, and with markings "throughout" claiming confidentiality. And shortly after becoming aware that TCEQ misunderstood the message, Samsung reasserted its privilege—over one week before TCEQ received the PIA request at issue here.

The Audit Privilege Act does not impose any limitations or requirements on what might constitute a "claim of confidentiality." In light of the statute's specification that waiver can be accomplished only

29

by "express waiver," Samsung's actions (email notification, confidential markings "throughout," and follow-up correspondence) are more than sufficient to constitute a "claim of confidentiality."

### 3. The Attorney General's extra-textual interpretation fails.

The Attorney General has made three arguments in its attempt to characterize Samsung's report disclosure to TCEQ as "wavier." The Attorney General argued (1) Samsung's reports could not be confidential because the "the spill was already widely publicized," (2) regardless, Samsung's "claim of confidentiality" was untimely, and (3) had TCEQ known Samsung thought its reports were confidential, TCEQ would have refused to accept them. CR.163–65. The Attorney General's extra-statutory arguments fail.

### a. Public knowledge of the discharge does not waive Samsung's audit report confidentiality.

The Court can quickly reject the Attorney General's argument that public knowledge of the discharge somehow obviates Samsung's audit report privilege. The fact that a discharge happened is certainly not confidential. No one argues it is. News reports publicizing the discharge have nothing to do with Samsung's audit report privilege concerning

30

Samsung's internal environmental law study and subsequent additional remediation efforts.

"[T]he privilege to maintain a document's confidentiality belongs to the document owner." *In re Ford Motor Co.*, 211 S.W.3d 295, 301 (Tex. 2006) (orig. proceeding) (citing *In re Univ. of Tex. Health Ctr. at Tyler*, 33 S.W.3d 822, 828 (Tex. 2000) (orig. proceeding)). So even if TCEQ (or some other party) had released Samsung's reports to the public (which it did not) that also would not have constituted waiver of the privilege.[5]

### b.   The Audit Privilege Act does not impose a deadline to assert confidentiality.

TCEQ reaches beyond the text of the statute to argue Samsung's reassertion of its audit report privilege was "untimely." Section 1101.103(b)(3) contains no timing requirement for a "claim of confidentiality." Tex. Health & Safety Code § 1101.103(b)(3). The Legislature certainly could have imposed such a limitation. As demonstrated by TCEQ's powers and duties related to the Clean Air Act, TCEQ "may not disclose information submitted to the commission relating to secret processes or methods of manufacture or production *that*

---

[5] In this regard, Samsung secured immediate temporary relief precluding TCEQ from releasing its reports. 1.CR.14. That injunctive relief is still in effect. CR.102.

*is identified as confidential when submitted.*" Tex. Health & Safety Code § 382.041(a) (emphasis added).

The Legislature did not impose a timing limit on a claim of confidentiality under the Audit Privilege Act. Neither TCEQ nor this Court can engraft one. *E.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008) (noting "changing the meaning of [a] statute by adding words to it" "is a legislative function, not a judicial function").[6]

### c. TCEQ's policy of not accepting "confidential" material is beside the point.

The Attorney General tries to bolster its extra-statutory timing argument by contending that—had it known Samsung was submitting its reports under claim of confidentiality—TCEQ would not have accepted the reports, but would have returned them to Samsung under TCEQ policy. According to the Attorney General this shows "the parties treated these reports as ones required after a spill, not as confidential environmental audits." CR.165. This argument fails too.

---

[6] Additionally, failure to label a document in an audit report "does not constitute a waiver of the privilege" "or create a presumption that the privilege does or does not apply." Tex. Health & Safety Code § 1101.051(d).

As an initial matter, TCEQ's policy of not accepting confidential information cannot be read to undermine the protection afforded to audit reports arising from "voluntary" environmental law investigation. The Audit Privilege Act forbids TCEQ from "adopt[ing] a rule or impos[ing] a condition that circumvents the purpose of" the Act. Tex. Health & Safety Code § 1101.002(b). TCEQ therefore cannot refuse to accept information just because it might be submitted in conjunction with an otherwise confidential and privileged audit report. The statute requires the opposite, specifying TCEQ is permitted to review information required by state law (like the items "required after a spill") without impacting an applicable privilege. *Id.* § 1101.105(b).

The Attorney General's contention that the parties acted as though Samsung's reports were not confidential is refuted by the record and the Attorney General's own acknowledgment that Samsung submitted its reports with confidential markings "throughout." And it doesn't matter what TCEQ thought. Just like other parties cannot waive Samsung's privilege, neither can TCEQ. That argument fails, as already discussed.

## II. Public policy weighs in favor of maintaining Samsung's privilege, not PIA disclosure.

The Audit Privilege Act expressly authorizes parties like Samsung to undertake self-evaluation of their compliance with environmental laws. The stated policy is to encourage voluntary compliance with the law. *Id.* § 1101.002(a). Consistent with that policy, audit reports are privileged and may not be disclosed in civil actions, "whether legal or equitable," or in "administrative proceedings." *Id.* § 1101.101(b). And audit reports are exempt from PIA disclosure. Tex. Gov't Code § 552.125.[7]

The Attorney General trumpets state policy in favor of disclosure, CR.159, but that policy—by the PIA's own terms—does not apply when "otherwise expressly provided by law." *Id.* § 552.001(a). Here, the Audit Privilege Act expressly provides otherwise—classifying reports generated from "voluntary" evaluation of environmental law compliance as confidential and privileged, Tex. Health & Safety Code §§ 1101.003(a)(3), .101—and the PIA expressly incorporates that protection, Tex. Gov't Code § 552.125. To ignore that express, specific

---

[7] The Act also affords immunity from administrative or civil penalties for voluntary disclosure of environmental law noncompliance. Tex. Health & Safety Code § 1101.151. And the term "environmental law" "shall be construed broadly." *Id.* § 1101.003(e).

34

statutory prohibition under the guise of "liberal" PIA construction would discard plain statutory terms of *both* the Audit Privilege Act and the PIA.

Samsung's reports are privileged under the terms of the Audit Privilege Act and are expressly exempted from disclosure under the PIA. The state policy here aligns to protect Samsung's voluntary examination into its environmental law compliance and resulting reports.

## PRAYER

The Court should reverse, hold Samsung's reports are privileged and confidential under the Audit Privilege Act and protected from PIA disclosure, and render judgment in favor of Samsung.

Respectfully submitted,

*/s/ Danica L. Milios*
Danica L. Milios
State Bar No. 00791261
Jack E. Skaggs
State Bar No. 24051345
Jackson Walker, LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 (fax)
dmilios@jw.com
jskaggs@jw.com

*Counsel for Appellant*

35

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i) because it contains 6,369 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Danica L. Milios*
Danica L. Milios

**CERTIFICATE OF SERVICE**

I certify that on December 2, 2025, a true and correct copy of the foregoing document was served on the following counsel via electronic service:

Martin Cohick
State Bar No. 24134042
martin.cohick@oag.texas.gov
Office of the Attorney General of Texas
PO Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1317
(512) 320-0667 (fax)
*Counsel for Appellee*

Kimberly Gdula
State Bar No. 24052209
kimberly.gdula@oag.texas.gov
Office of the Attorney General of Texas
PO Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1317
(512) 320-0667 (fax)
*Counsel for Texas Commission on Environmental Quality, and Kelly Keel, Executive Director of the Texas Commission on Environmental Quality*

/s/ *Danica L. Milios*
Danica L. Milios

## INDEX TO APPENDIX

Order Granting Defendant's Motion for Summary
Judgment (signed May 1, 2025) ............................................................. A

Tex. Health & Safety Code §§ 1101.001–.158 ........................................... B

30 Tex. Admin. Code § 327.3 .................................................................. C

30 Tex. Admin. Code § 327.5 .................................................................. D

# TAB A

CAUSE NO. D-1-GN-22-004532

| | | |
|---|---|---|
| SAMSUNG AUSTIN SEMICONDUCTOR, LLC, *Plaintiff,* | §§§§ | IN THE DISTRICT COURT OF |
| v. | §§ | TRAVIS COUNTY, TEXAS |
| KEN PAXTON, ATTORNEY GENERAL OF TEXAS, TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, AND TOBY BAKER, EXECUTIVE DIRECTOR OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, *Defendant.* | §§§§§§§§§§ | 200th JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

On this first day of May 2025, came on to be considered Defendant's Motion for Summary Judgment in the above-styled and numbered cause and after reviewing the motions, responses, and evidence, the Court finds that said Motion for Summary Judgment should be in all things GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendant's Motion for Summary Judgment is GRANTED. The Texas Commission on Environmental Quality and Samsung Austin Semiconductor, LLC must follow letter ruling OR2022-26889. All other relief not expressly granted in this order is denied. This order is final and appealable

SIGNED on this the 1st day of May, 2025.

_____
HONORABLE PRESIDING JUDGE

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 09/17/2025 11:08:02

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

Order Granting Defendant's Motion for Summary Judgment
Cause No. D-1-GN-22-004532                                    Page 1

339

# TAB B

TITLE 13.  ENVIRONMENTAL, HEALTH, AND SAFETY AUDIT PRIVILEGE ACT

CHAPTER 1101.  ENVIRONMENTAL, HEALTH, AND SAFETY AUDIT PRIVILEGE ACT

SUBCHAPTER A.  GENERAL PROVISIONS

Sec. 1101.001.  SHORT TITLE.  This chapter may be cited as the Texas Environmental, Health, and Safety Audit Privilege Act.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.002.  PURPOSE; CIRCUMVENTION BY RULE PROHIBITED.  (a)  The purpose of this chapter is to encourage voluntary compliance with environmental and occupational health and safety laws.
(b)  A regulatory agency may not adopt a rule or impose a condition that circumvents the purpose of this chapter.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.003.  DEFINITIONS.  (a)  In this chapter:
(1)  "Acquisition closing date" means the date on which ownership of, or a direct or indirect majority interest in the ownership of, a regulated facility or operation is acquired in an asset purchase, equity purchase, merger, or similar transaction.
(2)  "Audit report" means an audit report described by Section 1101.051.
(3)  "Environmental or health and safety audit" or "audit" means a systematic voluntary evaluation, review, or assessment of compliance with environmental or health and safety laws or with any permit issued under an environmental or health and safety law conducted by an owner or operator, an employee of an owner or operator, a person, including an employee or independent contractor of the person, that is considering the acquisition of a regulated facility or operation, or an independent contractor of:
(A)  a regulated facility or operation; or
(B)  an activity at a regulated facility or operation.
(4)  "Environmental or health and safety law" means:

(A)  a federal or state environmental or occupational health and safety law; or

(B)  a rule, regulation, or regional or local law adopted in conjunction with a law described by Paragraph (A).

(5)  "Owner or operator" means a person who owns or operates a regulated facility or operation.

(6)  "Penalty" means an administrative, civil, or criminal sanction imposed by the state to punish a person for a violation of a statute or rule.  The term does not include a technical or remedial provision ordered by a regulatory authority.

(7)  "Regulated facility or operation" means a facility or operation that is regulated under an environmental or health and safety law.

(b)  A person acts intentionally for purposes of this chapter if the person acts intentionally within the meaning of Section 6.03, Penal Code.

(c)  For purposes of this chapter, a person acts knowingly, or with knowledge, with respect to the nature of the person's conduct when the person is aware of the person's physical acts.  A person acts knowingly, or with knowledge, with respect to the result of the person's conduct when the person is aware that the conduct will cause the result.

(d)  A person acts recklessly or is reckless for purposes of this chapter if the person acts recklessly or is reckless within the meaning of Section 6.03, Penal Code.

(e)  To fully implement the privilege established by this chapter, the term "environmental or health and safety law" shall be construed broadly.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.004.  APPLICABILITY.  The privilege established by this chapter applies to environmental or health and safety audits that are conducted on or after May 23, 1995.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.005.  RELATIONSHIP TO OTHER RECOGNIZED PRIVILEGES. This chapter does not limit, waive, or abrogate the scope or nature of any statutory or common law privilege, including the work product doctrine and the attorney-client privilege.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

SUBCHAPTER B.  GENERAL AUDIT PROVISIONS

Sec. 1101.051.  AUDIT REPORT.  (a)  An audit report is a report that includes each document and communication, other than those described by Section 1101.102, produced from an environmental or health and safety audit.

(b)  General components that may be contained in a completed audit report include:

(1)  a report prepared by an auditor, monitor, or similar person, which may include:

(A)  a description of the scope of the audit;

(B)  the information gained in the audit and findings, conclusions, and recommendations; and

(C)  exhibits and appendices;

(2)  memoranda and documents analyzing all or a portion of the materials described by Subdivision (1) or discussing implementation issues; and

(3)  an implementation plan or tracking system to correct past noncompliance, improve current compliance, or prevent future noncompliance.

(c)  The types of exhibits and appendices that may be contained in an audit report include supporting information that is collected or developed for the primary purpose of and in the course of an environmental or health and safety audit, including:

(1)  interviews with current or former employees;

(2)  field notes and records of observations;

(3)  findings, opinions, suggestions, conclusions, guidance, notes, drafts, and memoranda;

(4)  legal analyses;

(5)  drawings;

(6)  photographs;

(7)  laboratory analyses and other analytical data;

(8)  computer-generated or electronically recorded information;

(9)  maps, charts, graphs, and surveys; and

(10)  other communications associated with an environmental or health and safety audit.

(d)  To facilitate identification, each document in an audit report should be labeled "COMPLIANCE REPORT:  PRIVILEGED DOCUMENT" or labeled with words of similar import.  Failure to label a document under this section

does not constitute a waiver of the privilege established by this chapter or create a presumption that the privilege does or does not apply.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.052.  PERIOD FOR COMPLETION OF AUDIT.  (a)  Unless an extension is approved by the governmental entity with regulatory authority over the regulated facility or operation based on reasonable grounds, an environmental or health and safety audit must be completed within a reasonable time not to exceed six months after:
        (1)  the date the audit is initiated; or
        (2)  the acquisition closing date, if the person continues the audit under Section 1101.053.
        (b)  Subsection (a)(1) does not apply to an environmental or health and safety audit conducted before the acquisition closing date by a person that is considering the acquisition of the regulated facility or operation.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.053.  CONTINUATION OF AUDIT BEGUN BEFORE ACQUISITION CLOSING DATE.  A person that begins an environmental or health and safety audit before becoming the owner of a regulated facility or operation may continue the audit after the acquisition closing date if the person gives notice under Section 1101.155.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


SUBCHAPTER C.  PRIVILEGE

Sec. 1101.101.  SCOPE OF PRIVILEGE.  (a)  An audit report is privileged as provided by this section.
        (b)  Except as provided by Sections 1101.102, 1101.103, and 1101.104, any part of an audit report is privileged and is not admissible as evidence or subject to discovery in:
        (1)  a civil action, whether legal or equitable; or
        (2)  an administrative proceeding.
        (c)  A person, when called or subpoenaed as a witness, may not be compelled to testify or produce a document related to an environmental or

health and safety audit if:

(1)  the testimony or document discloses any item listed in Section 1101.051 that was made as part of the preparation of an audit report and that is addressed in a privileged part of an audit report;  and

(2)  the person is:

(A)  a person who conducted any portion of the audit but did not personally observe the physical events;

(B)  a person to whom the audit results are disclosed under Section 1101.103(b); or

(C)  a custodian of the audit results.

(d)  A person who conducts or participates in the preparation of an environmental or health and safety audit and who has actually observed physical events of violation may testify about those events but may not be compelled to testify about or produce documents related to the preparation of or any privileged part of an environmental or health and safety audit or any item listed in Section 1101.051.

(e)  An employee of a state agency may not request, review, or otherwise use an audit report during an agency inspection of a regulated facility or operation or an activity of a regulated facility or operation.

(f)  A party asserting the privilege created by this section has the burden of establishing the applicability of the privilege.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.102.  NONPRIVILEGED MATERIALS.  (a)  The privilege established by Section 1101.101 does not apply to:

(1)  a document, communication, datum, or report or other information required by a regulatory agency to be collected, developed, maintained, or reported under a federal or state environmental or health and safety law;

(2)  information obtained by observation, sampling, or monitoring by a regulatory agency; or

(3)  information obtained from a source not involved in the preparation of the audit report.

(b)  This section does not limit the right of a person to agree to conduct and disclose an audit report.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

Sec. 1101.103. EXCEPTION: WAIVER. (a) The privilege established by Section 1101.101 does not apply to the extent the privilege is expressly waived by the owner or operator who prepared the audit report or caused the report to be prepared.

(b) Disclosure of an audit report or any information generated by an environmental or health and safety audit does not waive the privilege established by Section 1101.101 if the disclosure:

(1) is made to address or correct a matter raised by the audit and is made only to:

(A) a person employed by the owner or operator, including a temporary or contract employee;

(B) a legal representative of the owner or operator;

(C) an officer or director of the regulated facility or operation or a partner of the owner or operator;

(D) an independent contractor of the owner or operator;

(E) a person considering the acquisition of the regulated facility or operation that is the subject of the audit; or

(F) an employee, temporary employee, contract employee, legal representative, officer, director, partner, or independent contractor of a person described by Paragraph (E);

(2) is made under the terms of a confidentiality agreement between the person for whom the audit report was prepared or the owner or operator of the audited facility or operation and:

(A) a partner or potential partner of the owner or operator of the facility or operation;

(B) a transferee or potential transferee of the facility or operation;

(C) a lender or potential lender for the facility or operation;

(D) a governmental official of a state; or

(E) a person engaged in the business of insuring, underwriting, or indemnifying the facility or operation; or

(3) is made under a claim of confidentiality to a governmental official or agency by the person for whom the audit report was prepared or by the owner or operator.

(c) A party to a confidentiality agreement described by Subsection (b)(2) who violates that agreement is liable for damages caused by the disclosure and for any other penalties stipulated in the confidentiality agreement.

(d)   Information that is disclosed under Subsection (b)(3) is confidential and is not subject to disclosure under Chapter 552, Government Code.  A public entity, public employee, or public official who discloses information in violation of this subsection is subject to any penalty provided by Chapter 552, Government Code. It is an affirmative defense to the clerical dissemination of a privileged audit report that the report was not clearly labeled "COMPLIANCE REPORT:  PRIVILEGED DOCUMENT" or labeled with words of similar import.  The lack of labeling may not be raised as a defense if the entity, employee, or official knew or had reason to know that the document was a privileged audit report.

(e)   This section may not be construed to circumvent the protections provided by federal or state law for individuals who disclose information to law enforcement authorities.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.104.  EXCEPTION:  DISCLOSURE REQUIRED BY COURT OR ADMINISTRATIVE HEARINGS OFFICIAL.  (a)  A court or administrative hearings official with competent jurisdiction may require disclosure of a portion of an audit report in a civil or administrative proceeding if the court or administrative hearings official determines, after an in camera review consistent with the appropriate rules of procedure, that:

(1)   the privilege is asserted for a fraudulent purpose;

(2)   the portion of the audit report is not subject to the privilege by application of Section 1101.102; or

(3)   the portion of the audit report shows evidence of noncompliance with an environmental or health and safety law and appropriate efforts to achieve compliance with the law were not promptly initiated and pursued with reasonable diligence after discovery of noncompliance.

(b)   A party seeking disclosure under this section has the burden of proving that Subsection (a)(1), (2), or (3) applies.

(c)   Notwithstanding Chapter 2001, Government Code, a decision of an administrative hearings official under Subsection (a)(1), (2), or (3) of this section is directly appealable to a court of competent jurisdiction without disclosure of the audit report to any person unless so ordered by the court.

(d)   A person claiming the privilege is subject to sanctions as provided by Rule 215 of the Texas Rules of Civil Procedure or to a fine not to exceed $10,000 if the court finds, consistent with fundamental due

process, that the person intentionally or knowingly claimed the privilege for information that, by application of Section 1101.102, is not subject to the privilege.

(e)  A determination of a court under this section is subject to interlocutory appeal to an appropriate appellate court.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.105.  REVIEW OF PRIVILEGED DOCUMENTS BY GOVERNMENTAL AUTHORITY.  (a)  If an audit report is obtained, reviewed, or used in a criminal proceeding, the administrative or civil evidentiary privilege established by Section 1101.101 is not waived or eliminated for any other purpose.

(b)  Notwithstanding the privilege established by Section 1101.101, a regulatory agency may review information that is required to be available under a specific state or federal law, but that review does not waive or eliminate the administrative or civil evidentiary privilege if applicable.

(c)  If information is required to be available to the public by operation of a specific state or federal law, the governmental authority shall notify the person claiming the privilege of the potential for public disclosure before obtaining the information under Subsection (a) or (b).

(d)  If privileged information is disclosed under Subsection (b) or (c), on the motion of a party, a court or the appropriate administrative official shall suppress evidence offered in any civil or administrative proceeding that arises or is derived from review, disclosure, or use of information obtained under this section unless the review, disclosure, or use is authorized under Section 1101.102.  A party having received information under Subsection (b) or (c) has the burden of proving that the evidence offered did not arise and was not derived from the review of privileged information.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


SUBCHAPTER D.  VOLUNTARY DISCLOSURE; IMMUNITY

Sec. 1101.151.  IMMUNITY FOR VIOLATION VOLUNTARILY DISCLOSED.  Except as otherwise provided by this subchapter, a person who makes a voluntary disclosure of a violation of an environmental or health and safety law is immune from an administrative or civil penalty for the violation disclosed.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.152. NATURE OF VOLUNTARY DISCLOSURE. (a) A disclosure is voluntary for purposes of this subchapter only if:

(1) the disclosure was made:

(A) promptly after knowledge of the information disclosed is obtained by the person making the disclosure; or

(B) not later than the 45th day after the acquisition closing date, if the violation was discovered during an audit conducted before the acquisition closing date by a person considering the acquisition of the regulated facility or operation;

(2) the disclosure was made in writing by certified mail to an agency that has regulatory authority with regard to the violation disclosed;

(3) an investigation of the violation was not initiated or the violation was not independently detected by an agency with enforcement jurisdiction before the disclosure was made using certified mail;

(4) the disclosure arises out of a voluntary environmental or health and safety audit;

(5) the person making the disclosure initiates an appropriate effort to achieve compliance, pursues that effort with due diligence, and corrects the noncompliance within a reasonable time;

(6) the person making the disclosure cooperates with the appropriate agency in connection with an investigation of the issues identified in the disclosure; and

(7) the violation did not result in:

(A) injury or imminent and substantial risk of serious injury to one or more persons at the site; or

(B) off-site substantial actual harm or imminent and substantial risk of harm to persons, property, or the environment.

(b) For a disclosure described by Subsection (a)(1)(B), the person making the disclosure must certify in the disclosure that before the acquisition closing date:

(1) the person was not responsible for the environmental, health, or safety compliance at the regulated facility or operation that is subject to the disclosure;

(2) the person did not have the largest ownership share of the seller;

(3)  the seller did not have the largest ownership share of the person; and

(4)  the person and the seller did not have a common corporate parent or a common majority interest owner.

(c)  A disclosure is not voluntary for purposes of this subchapter if the disclosure is a report to a regulatory agency required solely by a specific condition of an enforcement order or decree.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.153.  BURDEN OF PROOF WITH RESPECT TO VOLUNTARY DISCLOSURE. (a)  In a civil or administrative enforcement action brought against a person for a violation for which the person claims to have made a voluntary disclosure, the person claiming the immunity created by this subchapter has the burden of establishing a prima facie case that the disclosure was voluntary.

(b)  After the person claiming the immunity establishes a prima facie case of voluntary disclosure, other than a case in which immunity does not apply under Section 1101.157, the enforcement authority has the burden of rebutting the presumption by a preponderance of the evidence.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.154.  NOTICE REQUIREMENT.  (a)  This section does not apply to an environmental or health and safety audit conducted before the acquisition closing date by a person considering the acquisition of the regulated facility or operation that is the subject of the audit.

(b)  To receive immunity under this subchapter, a facility conducting an environmental or health and safety audit under this chapter must provide notice to an appropriate regulatory agency of the fact that it is planning to begin the audit.

(c)  The notice must specify:

(1)  the facility or portion of the facility to be audited;

(2)  the anticipated time the audit will begin; and

(3)  the general scope of the audit.

(d)  The notice may provide notification of more than one scheduled environmental or health and safety audit at a time.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

Sec. 1101.155.  NOTICE REQUIREMENT FOR CERTAIN AUDITS BEGUN BEFORE ACQUISITION CLOSING DATE.  (a)  A person that begins an environmental or health and safety audit before becoming the owner of the regulated facility or operation that is the subject of the audit may continue the audit after the acquisition closing date if, not later than the 45th day after the acquisition closing date, the person provides notice to an appropriate regulatory agency of the fact that the person intends to continue an ongoing audit.

(b)  The notice must specify:

(1)  the facility or portion of the facility being audited;

(2)  the date the audit began; and

(3)  the general scope of the audit.

(c)  The person must certify in the notice that before the acquisition closing date:

(1)  the person was not responsible for the scope of the environmental, health, or safety compliance being audited at the regulated facility or operation;

(2)  the person did not have the largest ownership share of the seller;

(3)  the seller did not have the largest ownership share of the person; and

(4)  the person and the seller did not have a common corporate parent or a common majority interest owner.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

Sec. 1101.156.  IDENTIFICATION OF VIOLATION IN COMPLIANCE HISTORY REPORT.  A violation that has been voluntarily disclosed and to which immunity applies under this subchapter must be identified in a compliance history report as being voluntarily disclosed.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

Sec. 1101.157.  EXCEPTION TO IMMUNITY:  CERTAIN VIOLATIONS AND OFFENSES; IMPOSITION OF PENALTY; MITIGATING FACTORS.  (a)  The immunity

established by this subchapter does not apply and an administrative or civil penalty may be imposed under applicable law if:

(1)  the person who made the disclosure intentionally or knowingly committed or was responsible within the meaning of Section 7.02, Penal Code, for the commission of the disclosed violation;

(2)  the person who made the disclosure recklessly committed or was responsible within the meaning of Section 7.02, Penal Code, for the commission of the disclosed violation and the violation resulted in substantial injury to one or more persons at the site or off-site harm to persons, property, or the environment;

(3)  the offense was committed intentionally or knowingly by a member of the person's management or an agent of the person and the person's policies or lack of prevention systems contributed materially to the occurrence of the violation;

(4)  the offense was committed recklessly by a member of the person's management or an agent of the person, the person's policies or lack of prevention systems contributed materially to the occurrence of the violation, and the violation resulted in substantial injury to one or more persons at the site or off-site harm to persons, property, or the environment; or

(5)  the violation has resulted in a substantial economic benefit that gives the violator a clear advantage over its business competitors.

(b)  A penalty that is imposed under Subsection (a) should, to the extent appropriate, be mitigated by factors such as:

(1)  the voluntariness of the disclosure;

(2)  efforts by the disclosing party to conduct environmental or health and safety audits;

(3)  remediation;

(4)  cooperation with government officials investigating the disclosed violation;

(5)  the period of ownership of the regulated facility or operation; or

(6)  other relevant considerations.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.


Sec. 1101.158.  EXCEPTION TO IMMUNITY:  VIOLATIONS THAT CONSTITUTE PATTERN OF DISREGARD OF ENVIRONMENTAL OR HEALTH AND SAFETY LAWS.  (a)  The immunity established by this subchapter does not apply if a court or administrative law judge finds that the person claiming the immunity has,

after May 23, 1995, repeatedly or continuously committed significant violations and not attempted to bring the facility or operation into compliance, so as to constitute a pattern of disregard of environmental or health and safety laws.

(b)  For violations committed by a person to be considered a "pattern" under Subsection (a), the person must have committed a series of violations that were due to separate and distinct events occurring within a three-year period at the same facility or operation.

Added by Acts 2017, 85th Leg., R.S., Ch. 324 (S.B. 1488), Sec. 20.002(a), eff. September 1, 2017.

# TAB C

Texas Administrative Code
Title 30. Environmental Quality
Part 1. Texas Commission on Environmental Quality
Chapter 327. Spill Prevention and Control

30 TAC § 327.3

§ 327.3. Notification Requirements

Currentness

(a) Reportable discharge or spill. A reportable discharge or spill is a discharge or spill of oil, petroleum product, used oil, hazardous substances, industrial solid waste, or other substances into the environment in a quantity equal to or greater than the reportable quantity listed in § 327.4 of this title (relating to Reportable Quantities) in any 24-hour period.

(b) Initial notification. Upon the determination that a reportable discharge or spill has occurred, the responsible person shall notify the agency as soon as possible but not later than 24 hours after the discovery of the spill or discharge.

(c) Method of notification. The responsible person shall notify the agency in any reasonable manner including by telephone, in person, or by any other method approved by the agency. In all cases, the initial notification shall provide, to the extent known, the information listed in subsection (d) of this section. Notice provided under this section satisfies the federal requirement to notify the State Emergency Response Commission in the State of Texas. The responsible person shall notify one of the following:

(1) the State Emergency Response Center at 1-800-832-8224;

(2) during normal business hours only, the regional office for the agency region in which the discharge or spill occurred; or

(3) the agency at the agency 24-hour spill reporting number.

(d) Information required in initial notification. The initial notification shall provide, to the extent known, the information in the following list. Copies of spill reports prepared for other governmental agencies shall satisfy this requirement if they contain, or are supplemented to contain, all the information required by this subsection. The initial notification shall contain:

(1) the name, address and telephone number of the person making the telephone report;

(2) the date, time, and location of the spill or discharge;

(3) a specific description or identification of the oil, petroleum product, hazardous substances or other substances discharged or spilled;

(4) an estimate of the quantity discharged or spilled;

(5) the duration of the incident;

(6) the name of the surface water or a description of the waters in the state affected or threatened by the discharge or spill;

(7) the source of the discharge or spill;

(8) a description of the extent of actual or potential water pollution or harmful impacts to the environment and an identification of any environmentally sensitive areas or natural resources at risk;

(9) if different from paragraph (1) of this subsection, the names, addresses, and telephone numbers of the responsible person and the contact person at the location of the discharge or spill;

(10) a description of any actions that have been taken, are being taken, and will be taken to contain and respond to the discharge or spill;

(11) any known or anticipated health risks;

(12) the identity of any governmental representatives, including local authorities or third parties, responding to the discharge or spill; and

(13) any other information that may be significant to the response action.

(e) Update notification. The responsible person shall notify the agency as soon as possible whenever necessary to provide information that would trigger a change in the response to the spill or discharge.

(f) Correction of records. Notifying the agency that a reportable discharge or spill has occurred shall not be construed as an admission that pollution has occurred. Furthermore, if the responsible person determines, after notification, that a reportable discharge or spill did not occur, the responsible person may send a letter to the agency documenting that determination. If the executive director agrees with that determination, the executive director will note the determination in commission records. If the executive director disagrees with that determination, the executive director will notify the responsible person within 30 days.

(g) Notification of local governmental authorities. If the discharge or spill creates an imminent health threat, the responsible person shall immediately notify and cooperate with local emergency authorities (fire department, fire marshal, law enforcement authority, health authority, or Local Emergency Planning Committee (LEPC), as appropriate). The responsible party will cooperate with the local emergency authority in providing support to implement appropriate notification and response actions. The local emergency authority, as necessary, will implement its emergency management plan, which may include notifying and evacuating affected persons. In the absence of a local emergency authority, the responsible person shall take reasonable measures to notify potentially affected persons of the imminent health threat.

(h) Notification to property owner and residents. As soon as possible, but no later than two weeks after discovery of the spill or discharge, the responsible person shall reasonably attempt to notify the owner (if identifiable) or occupant of the property upon which the discharge or spill occurred as well as the occupants of any property that the responsible person reasonably believes is adversely affected.

(i) Additional notification required.

(1) Except as noted in paragraph (2) of this subsection, complying with the notification requirements set forth in this section does not relieve, satisfy, or fulfill any other notification requirements imposed by permit or other local, state, or federal law.

(2) Notice provided under this section satisfies the federal requirement to notify the State Emergency Response Commission in the State of Texas.

(j) Alternative notification plans.

(1) Responsible persons in charge of activities and facilities may submit and implement an alternative notification plan. This alternative notification plan shall comply with the Texas Water Code, § 26.039. Responsible persons shall obtain the agency's written approval before implementing any alternative notification plan.

(2) Upon approval of the agency regional manager, responsible persons may provide the initial notification by facsimile to the regional office during normal business hours.

**Credits**
**Source:** The provisions of this § 327.3 adopted to be effective May 23, 1996, 21 TexReg 4228.

Current through 50 Tex.Reg. No. 7154, dated October 31, 2025, as effective on or before November 7, 2025. Some sections may be more current. See credits for details.

30 TAC § 327.3, 30 TX ADC § 327.3

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# TAB D

Texas Administrative Code
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental Quality
      Chapter 327. Spill Prevention and Control

30 TAC § 327.5

§ 327.5. Actions Required

Currentness

(a) The responsible person shall immediately abate and contain the spill or discharge and cooperate fully with the executive director and the local incident command system. The responsible person shall also begin reasonable response actions which may include, but are not limited to, the following actions:

(1) arrival of the responsible person or response personnel hired by the responsible person at the site of the discharge or spill;

(2) initiating efforts to stop the discharge or spill;

(3) minimizing the impact to the public health and the environment;

(4) neutralizing the effects of the incident;

(5) removing the discharged or spilled substances; and

(6) managing the wastes.

(b) Upon request of the local government responders or the executive director, the responsible person shall provide a verbal or written description, or both, of the planned response actions and all actions taken before the local governmental responders or the executive director arrive. When the agency on-scene coordinator requests this information, it is subject to possible additional response action requirements by the executive director. The information will serve as a basis for the executive director to determine the need for:

(1) further response actions by the responsible person;

(2) initiating state funded actions for which the responsible person may be held liable to the maximum extent allowed by law; and

(3) subsequent reports on the response actions.

(c) Except for discharges or spills occurring during the normal course of transportation about which carriers are required to file a written report with the U.S. Department of Transportation under 49 CFR § 171.16, the responsible person shall submit written information, such as a letter, describing the details of the discharge or spill and supporting the adequacy of the response action, to the appropriate TNRCC regional manager within 30 working days of the discovery of the reportable discharge or spill. The regional manager has the discretion to extend the deadline. The documentation shall contain one of the following items:

(1) A statement that the discharge or spill response action has been completed and a description of how the response action was conducted. The statement shall include the initial report information required by § 327.3(c) of this title (relating to Notification Requirements). The executive director may request additional information. Appropriate response actions at any time following the discharge or spill include use of the Texas Risk Reduction Program rules in Chapter 350 of this title (relating to Texas Risk Reduction Program).

(2) A request for an extension of time to complete the response action, along with the reasons for the request. The request shall also include a projected work schedule outlining the time required to complete the response action. The executive director may grant an extension up to six months from the date the spill or discharge was reported. Unless otherwise notified by the appropriate regional manager or the Emergency Response Team, the responsible person shall proceed according to the terms of the projected work schedule.

(3) A statement that the discharge or spill response action has not been completed nor is it expected to be completed within the maximum allowable six month extension. The statement shall explain why completion of the response action is not feasible and include a projected work schedule outlining the remaining tasks to complete the response action. This information will also serve as notification that the response actions to the discharge or spill will be conducted under the Texas Risk Reduction Program rules in Chapter 350 of this title (relating to Texas Risk Reduction Program).

**Credits**
**Source:** The provisions of this § 327.5 adopted to be effective May 23, 1996, 21 TexReg 4228; amended to be effective December 26, 1996, 21 TexReg 12175; amended to be effective September 23, 1999, 24 TexReg 7415.

Current through 50 Tex.Reg. No. 7154, dated October 31, 2025, as effective on or before November 7, 2025. Some sections may be more current. See credits for details.

30 TAC § 327.5, 30 TX ADC § 327.5

---

*End of Document* © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Yvonne Ferrari on behalf of Danica Milios
Bar No. 791261
yferrari@jw.com
Envelope ID: 108609077
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief Not Requesting Oral Argument
Status as of 12/2/2025 1:15 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Danica Milios | | dmilios@jw.com | 12/2/2025 11:52:01 AM | SENT |
| Kimberly Gdula | 24052209 | kimberly.gdula@oag.texas.gov | 12/2/2025 11:52:01 AM | SENT |
| Jack Skaggs | | jskaggs@jw.com | 12/2/2025 11:52:01 AM | SENT |
| Martin Cohick | 24134042 | martin.cohick@oag.texas.gov | 12/2/2025 11:52:01 AM | SENT |